

TJS

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | **District: Eastern District of Pennsylvania** |
|---|---|
| Name (under which you were convicted):<br><br>Christopher Goodwin | Docket or Case No.:<br><br>18 5269 |
| Place of Confinement:<br>SCI-GREENE | Prisoner No.: LA8313 |

Petitioner (Include the name under which you were convicted):

Christopher Goodwin

Respondent (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner):

John E. WETZEL, Robert Gilmore

and

v.

The District Attorney of the County of: Philadelphia

and

The Attorney General of the State of: Pennsylvania

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    The Common Pleas Court of Philadelphia, Hon. Barbara A. McDermott

    (b) Criminal docket or case number (if you know): CP-51-CR-0012214-2011

2.  (a) Date of judgment of conviction (if you know): May 28, 2013

    (b) Date of sentencing: May 28, 2013

3.  Length of sentence: Life w/o Parole

4.  In this case, were you convicted on more than one count or of more than one crime? ☑ Yes ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Murder in the 1st Degree + weapon charges

6.   (a)   What was your plea? (Check one)

     ☑(1)   Not Guilty       ☐(3)   Nolo contendere (no contest)

     ☐(2)   Guilty         ☐(4)   Insanity plea

  (b)   If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

  (c)   If you went to trial, what kind of trial did you have? (Check one)

     ☑   Jury         ☐   Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

     ☐   Yes         ☑   No

8.   Did you appeal from the judgment of conviction?

     ☑   Yes         ☐   No

9.   If you did appeal, answer the following:

  (a)   Name of court: Superior Court of Pennsylvania

  (b)   Docket or case number (if you know): 2009 EDA 2013 c051-CQ-0012214-2011

  (c)   Result: affirmed

  (d)   Date of result (if you know): July 14 2014

  (e)   Citation to the case (if you know): 2009 EDA 2013

  (f)   Grounds raised: The Sufficiency of the evidence and the weight of the evidence

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court: Supreme Court of Pennsylvania

(2) Docket or case number (if you know): 108 A 3d 34

(3) Result: Denied

(4) Date of result (if you know): January 21, 2015

(5) Citation to the case (if you know): 108 A 3d 34

(6) Grounds raised: The Sufficiency of the evidence and The weight of the evidence.

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Common Pleas Court, Philadelphia County

(2) Docket or case number (if you know): CP-51-CR-0012214-2011

(3) Date of filing (if you know): June 15, 2015

(4) Nature of the proceeding: Post-Conviction Relief

(5) Grounds raised: Ineffective assistance of counsel for the following: failure to investigate, failure to object to the victim state of mind, opening the door to prejudicial testimonies, failure to impeach witness with exculpatory evidence, failure to object to threats, failure to object to the prosecutor bullying and arguing with witness, failure to object to advocacy violation, failure to object to frauds, failure to object to closing arguments, failure to object to faulty instruction, failure to object to the prosecutor inflaming the passions of the jury, Cumulative effect, and direct appeal counsel failed to challenge hearsay evidence.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: Denied

(8) Date of result (if you know): October 24, 2016

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Common Pleas Court, Phila, Hon. Barbara A. McDermott

(2) Docket or case number (if you know): CP·51-CR-0017214-2011

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: Post-Conviction Relief

(5) Grounds raised: Brady

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: Denied due to pending appeal

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

_____

_____

_____

_____

_____

_____

N /A

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes          ☑ No

(7) Result: _N /A_____

(8) Date of result (if you know): _N /A_____

(d)    Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1)    First petition:          ☑ Yes          ☐ No

(2)    Second petition:      ☐ Yes          ☑ No

(3)    Third petition:         ☐ Yes          ☑ No

(e)    If you did not appeal to the highest state court having jurisdiction, explain why you did not:

Second petition was filed while first petition
still pending.

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE: Trial counsel was ineffective for failing to
investigate and prepare for trial

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel failed to interview witness: (A) Tiera Young had
information that people said somebody else did this crime. (B)
Naheem Zachary presented evidence describing another shooter, support
alibi defense and would have contradicted commonwealth witness statement,
(C) failed to investigate and present evidence to support witness
allegation of police brutality in coercion of statement,
(see attached Exhibit W)

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____ N/A _____

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

Ineffective assistance of counsel cannot be raised on Direct Appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA petition

Name and location of the court where the motion or petition was filed: Common Pleas Court, Phila, Hon. Barbara A. McDermott

Docket or case number (if you know): CP-51-CR-0012214-2011

Date of the court's decision: October 24, 2016

Result (attach a copy of the court's opinion or order, if available): Denied

_____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

Docket or case number (if you know): 3609 EDA 2016

Date of the court's decision: June 28, 2018

Result (attach a copy of the court's opinion or order, if available): ___Affirmed___

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

N/A

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

N/A

**GROUND TWO:** Trial counsel ineffective for failing to object to the victim state of mind Hearsay statement

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The prosecutor elicited the victim hearsay statement that he was scard to come out to the neighborhood because of petitive. The prosecutor highlighted this evidence in opening statements, decedent sister Mittell testimony and closing arguement. This evidence was used to establish guilt counsel failed to object. (See attached Exhibit (1))

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

N/A

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐   Yes      ☑   No

(2) If you did not raise this issue in your direct appeal, explain why? _____

Ineffective assistance of counsel cannot be Raised on Direct Appeal.

### (d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA petition

Name and location of the court where the motion or petition was filed: Common Pleas Court, Phila, Hon. Barbara A. McDermott

Docket or case number (if you know): CP-51-CR-0017214 - 2011

Date of the court's decision: October 24, 2016

Result (attach a copy of the court's opinion or order, if available): Denied

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☑ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

Docket or case number (if you know): 3609 EDA 2016

Date of the court's decision: June 28, 2018

Result (attach a copy of the court's opinion or order, if available): Denied

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

N/A

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

N/A

**GROUND THREE:** Trial counsel ineffective for opening the door to numerous prejudicial testimony.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel elicited anonymous tips identifying petitioner as the shooter, elicited a non-testifying witness statement, elicited petitioner alleged incriminating statement, and elicited prior bad acts of a weapon.

(See attached EXHIBIT (1))

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

N/A

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☒ No

(2) If you did not raise this issue in your direct appeal, explain why?

Ineffective assistance of counsel cannot be raised on Direct Appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA Petition

Name and location of the court where the motion or petition was filed: Common Pleas
Court of Phila, Hon. Barbara A McDermott
Docket or case number (if you know): CP-51-CR-0012214-2011
Date of the court's decision: October 24, 2016
Result (attach a copy of the court's opinion or order, if available): Denied

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No
(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No
(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
☑ Yes ☐ No
(6) If your answer to Question (d)(4) is "Yes," state:
Name and location of the court where the appeal was filed: The Superior Court
of Pennsylvania
Docket or case number (if you know): 3609 EDA 2016
Date of the court's decision: June 28, 2018

Result (attach a copy of the court's opinion or order, if available): Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise
this issue: _____
N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground Three: _____
N/A

**GROUND FOUR:** Trial counsel ineffective for failing to impeach
witness with exculpatory evidence
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Trial counsel had in his possession evidence that those

was people naming kamal as the shooter but failed to
impeach Det. Paul testimony that nobody named kamal as
the shooter

(See attached Exhibit (A)

(b) If you did not exhaust your state remedies on Ground Four, explain why:

N/A

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☑ No

(2) If you did not raise this issue in your direct appeal, explain why?

Ineffective assistance of cousel cannot be raised on Direct
Appeal

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

☑ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA petition

Name and location of the court where the motion or petition was filed: Common Pleas
Court, Phila, Hon. Barbara A. McDermott

Docket or case number (if you know): CP-51-CR-0012214-2011

Date of the court's decision: October 24, 2016

Result (attach a copy of the court's opinion or order, if available): Denied

(3) Did you receive a hearing on your motion or petition?          ☐ Yes          ☑ No

(4) Did you appeal from the denial of your motion or petition?          ☑ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

      ☑ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of

Pennsylvania

Docket or case number (if you know): 3609 EDA 7016

Date of the court's decision: June 28, 2018

Result (attach a copy of the court's opinion or order, if available): Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

N/A

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?      ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

N/A

(b)   Is there any ground in this petition that has not been presented in some state or federal court? If
      so, which ground or grounds have not been presented, and state your reasons for not presenting
      them: _____

      _____ ㄱㄱㅇㄲㅌ _____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the
      conviction that you challenge in this petition?        ☐ Yes        ☑ No

      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the
      issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.
      Attach a copy of any court opinion or order, if available. _____

      _____

      _____

      _____

      _____ N/A _____

      _____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or
      federal, for the judgment you are challenging?        ☑ Yes        ☐ No

      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and
      the issues raised: Petition for Leave to File Allowance of
      Appeal Nunc Pro Tunc _____

      _____

      _____

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of
      the judgment you are challenging:

      (a)   At preliminary hearing:  W. Fred Harrison Jr., esq

      (b)   At arraignment and plea:  W. Fred Harrison Jr., esq

(c)  At trial: ___W. Fred Harrison Jr, esg___

(d)  At sentencing: ___W. Fred Harrison Jr, esg___

(e)  On appeal: ___David Rudenstein:esg. , amll Evans st. Phila, PA___
___laws___

(f)  In any post-conviction proceeding: ___James F. Berardinelli___

(g)  On appeal from any ruling against you in a post-conviction proceeding: _____
___pro se___

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  □ Yes  ☑ No

(a)  If so, give the name and location of the court that imposed the other sentence you will serve in the future: ___N/A___

(b)  Give the date the other sentence was imposed: ___N/A___

(c)  Give the length of the other sentence: ___N/A___

(d)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  □ Yes  ☑ No

18.  **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

Petitioner was convicted on may 28, 2013. Post-trial motion was denied thereafter. The Superior Court affirmed on July 14, 2014. On January 21, 2015 The Supreme Court denied petitioners allowance of appeal. No certiorari in the United State Supreme Court filed. On June 15 2015 appellant filed a timely pro se PCRA petition. On October 24, 2016 the PCRA court denied PCRA relief. Appellant filed a timely notice

of Appeal. The Superior Court affirmed the Lower Court decision on June 28, 2018. This left petitioner width about 10 months left on the AEDPA timeline. Reargument RN Gaye was denied on August 8, 2018 Allowance of Appeal was not accepted due to the Supreme Court Claim that the state Reargument was untimely.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: in the award of a new trial, release from custody, Evidentary Hearing,

or any other relief to which petitioner may be entitled.

Christopher Dorn

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this
Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___12 - 2 - 18___.

(month, date, year)

Executed (signed) on _____ (date). 12-2-18

Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing
this petition. _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### Petition for Relief From a Conviction or Sentence
### By a Person in State Custody
### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1.  To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from conviction of the sentence. This form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. § 2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, see Federal Rules of Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3d Cir. 2000)).

4.  Make sure the form is typed or neatly written.

5.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

6.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or argument, you must submit them in a separate memorandum.

7.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out an Application to Proceed in District Court Without Prepaying Fees or Costs. **Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.**

8.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

9.  As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that the federal court may deny your petition on the merits even if you have not exhausted your remedies.

10. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that was presented in a prior habeas corpus petition.

11. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that was not presented in a prior habeas corpus petition unless you show:

    (A)   the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

    (B)   (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

    Before such a second or successive petition may be filed in the district court, however, the petitioner must move in the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

12. When you have completed this form, send the original, three copies, and these **instructions** to the Clerk of the United States District Court at this address:

    **Clerk**
    **United States District Court**
    **for the Eastern District of Pennsylvania**
    **601 Market Street, Room 2609**
    **Philadelphia, PA 19106**

13. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge and you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

14. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

# EXHIBIT (1)

## GROUNDS FOR RELIEF

Petitioner avers that the following grounds for releif was raised first in petitioner's first PCRA petition. These issues were denied without a hearing on October 24, 2016. (CP-51-CR-0012214-2011) Ineffective assistance of counsel cannot be raised on Direct Appeal. Thereafter, petitioner filed a timely Notice of Appeal to The Superior Court.(3609 EDA 2016) The Superior Court affirmed the Lower Court decision. Therefore, for purposes of this Habeas Corpus these issues are exhausted as they were presented to the Superior Court.

## GROUND 1

Trial counsel was ineffective for failing to Adequately prepare a pretrial investigation.

### A) Failure to interview and investigate Tiara Young:

Tiara Young provided information within a witness statement, that there rumors that kamac did this shooting. Trial counsel was aware of this evidence as it was provided in discovery. This evidence is exculpatory as it points towards a different shooter.

There was no reasonable strategy why counsel did not at the minimum interview this witness and discover who told her kamac did the shooting. Absent counsel interview, petitioner cannot show the fruits of this interview, but there is sufficient evidence presented to show that counsel would have discovered additional evidence proving petitioner innocence and kamac guilt.

Counsel omission resulted in prejudice, as there was exculpatory evidence left out of petitioner's trial. The jury being face with accusations of someone naming kamac as the shoote

1

plus the evidence presented during trial of kamac, would have raised a reasonable doubt and changed the outcome at trial.

## B) **Failure to interview and call Raheem Zachary**

Petitioner was able during Appeal to recieve Mr.Zachary affidavit. Mr.Zachary affidavit consisted of someone not fitting petitioner describtion running from the scene of the crime in the direction that was alleged the shooter run during trial, corroborative evidence of petitioner alibi, and evidence to contradict the witnesses initial statement, which claim that Raheem was in the circle with the other witnesses during the shooting and the identification. Mr.Zachary statement also would have supported the witnesses recantation

Petitioner notified counsel of Mr.Zachary information and and willingness to come to court. Counsel for unknown reason to petitioner still did not follow up or call this witness. If counsel claim not to be informed of Mr.Zachary, then this argument still do not support any strategy as Mr.Zachary was a known eye-witness who failed to give a statement. This in itself should have motivated counsel to interview this witness and discover exculpatory evidence.

Counsel inaction resulted in prejudice as petitioner guilt rested on the credibility of two witnesses prior police statement Mr.Zachary would have: undermine the identification within the statements, contradicted Mr.Zachary being in the circle during the shooting, supported witnesses recantation, and corroborated petitioner's alibi. These factors shows lack of corroboration nor is this evidence the jury heard, which would have resulted in a different outcome.

2

C) **Failure to investigate and introduce corroborating evidence
to prove witness claim of police burtality.**

Petitioner contends that Mr.Cunningham gave a statement
to police implicating petitioner as the shooter. Thereafter,
this witness gave a affidavit to trial counsel explaining that
the police statement was the result of threatening and choking
by Dt.Pitts.(N.T.p.232 5/20/13) At trial this witness testified
to the same facts. Later, Dt.Gaul testified that although Dt.Pitt
was not leading the investigation, Dt.Pitt may have very well
been in contact with Mr.Cunningham. Then Dt.Gaul testified to
the character of Dt.Pitts and stated that he would never force
any false statement out of a witness.(N.T.p.36-89 5/22/13)

AT this point trial counsel should have presented some
type of evidence to support Mr.Cunningham's claim. Had trial
counsel present Comm. v. Unique Drayton(dismissed January 2011
due to Dt.Pitt interrogation tactics) and Comm. v. Amin Speaks
(false confession), in order to show allegation have been made
before, there is a reasonable probability that appellant's trial
would have been different. At the very least this evidence would
have impeached the witness prior police statement and gave cred-
ibility to his in court testimony. Trial counsel actions were
unreasonable as this evidence could have been discovered before
trial. Moreover, Mr.Cunningham became a defense witness and
counsel should have presented evidence to support this witness.

The evidence is admissible for impeachment purpose of the
witness initial statement and Dt.Gaul character testimony. More
over this evidence would have been admissible under the common
pattern of behavior(Pa.R.E. 406) not for the truth of the matter.

Also, it was confirmed that the witness had contact with Dt.Pitt
due to the witness description of Dt.Pitt,(N.T.p.233 5/20/13),
and Dt.Gaul testimony.(N.T.p.85-86 5/22/13)

The absence of these facts prejudice petitioner severly
in light of the fact the Dt.Gaul vouched for the character of
Dt.Pitt and the jury did not get to actually see the circumstance
under which the witness gave the initial statement. Also. equally
important is the fact that the jury never heard evidence to
contradict Dt.Gaul testimony of Dt.Pitt. Petitioner's guilt
rested on the witnesses initial statement and this evidence
would have undermine the commonwealth whole case. The other
witness also recanted and always maintained that he was not
sure of the identity of the shooter. If not for counsel omiision
there is a reasonable probability of a different outcome.

### GROUND 2

**Trial counsel was ineffective for failing to object to the victim
state of mind hearsay statement**

Petitioner contends that the prosecutor used the victim
hearsay statement during opening argument,(N.T.p.47 5/20/13),
witness Ms.Hall testimony,(N.T.p.263 5/21/13), and closing argu-
ment.(N.T.p.55 5/28/13) This evidence was used to show that
the victim was scared of petitioner in order to establish petit-
ioner's guilt.

Hearsay is an out-of-court statement offered to prove the
truth of the matter asserted in the statement. Trial counsel
had numerous times to object to the evidence as the prosecutor
highlighted this evidence throughout trial in order to prove
guilt.

4

Prejudice result as hearsay was used to establish petitioner and the jury took this evidence as confirmation. There was no limiting instruction. Moreover this is not a case with over- whelming evidence nor was this evidence cumulative. The harm cause by this type of evidence is the jury forming in there mind that the decedent had some valid reason to be scared of petitioner, implying past criminal behavior. There can not be any fear without justification for that fear.

### GROUND 3

**Trial counsel ineffective for opening the door to numerous pre- judicial testimony**

**A) Counsel elicited petitioner alleged statement admitting to taking drugs.**

Trial counsel during Dt.Verrecchio testimony elicited a statement that petitioner allegedly told the detective that petitioner takes xannies.(N.T.p.182-84 5/22/13) This showed prior bad acts.

Trial counsel actions were unreasonable, instead of counsel showing the inconsistencies within the statement with specific facts, counsel allowed the witness to introduce unknown evidence. Moreover trial counsel continued to question this statement instead of asking for a mistrial, when counsel knows that this statement was not in discovery and it undermined counsel's cross- examination. Also, during the judge colloquy, Dt.Verrecchio said the statement was made voluntary but no miranda warning was giving.(N.T.p.195 5/22/13) This should have given counsel further incentive to request a mistrial when counsel knows state- ments are presumptively involuntary, unless first advise of miranda rights.

5

Trial counsel dereliction continued when after counsel
asked for the statement to be stricken from the record, counsel
again brought the jury attention back to the statement about
appellant taking drugs.(N.T.p.217-20 5/22/13) The request for
the statement to be stricken from the record was not enough.
A motion for mistrial was require because the incident was of
such a nature that the unavoidable effect deprive petitioner
of a fair trial.

Finally petitioner suffered prejudice because the statement
was in the jury mind as the instruction came hours after. More
over petitioner trial depended on credibility. This statement
incriminated petitioner, showed petitioner to be a person of
criminal acts, and it was used to alleged the truth of the state-
ment. This error bolstered the commonwealth case. There is
no way to say that the jury was not swayed by this statement.
**B) Counsel elicited anonymous tips identifying peitioner as
the killer.**

Trial counsel first elicited this evidence when counsel
asked Dt.Gaul what did he do to find out the who, what, where,
and why?(N.T.p.50 5/22/13) Although counsel elicited that anony-
mous people were identifying the shooter and supplying the
motive, counsel wanted details of who was identified and what
was the rumors.(N.T.p.51-52 5/22/13) When counsel deliberatly
elicited petitioner as the person identified and the facts of
the dispute, even though Dt.Gaul was hesitant in given this
much detail, this evidence was now used to alleged the truth
of the matter.

Trial counsel did not stop eliciting this evidence. Instead of counsel avoiding this evidence, counsel seem okay with these unknown witnesses tainting petitioner trial.(N.T.p.68-71 5/22/13) Due to counsel actions Dt.Gaul started testifying to the tips even when the tips were irrelevant to the question.(N.T.pags.at 113-14, 125-26 5/22/13) The trial court had to tell the detective to just answer the question.

Counsel again acted unreasonable when not learning from Dt.Gaul testimony, elicited the same evidence during Dt.Verrecchi testimony. This was a striking instance of ineffectiveness becaus Dt.Verrecchio not only confirmed the tips but exposed a rumor that alleged petitioner could not get to the victim nephew so petitioner got the victim instead. Then counsel permitted the detective to introduce a non-testifying witness statement to prove the truth of the rumors.(N.T.p.166-76 5/22/13) This not only showed counsel abandonment but it showed counsel allowing evidence to be admitted establishing petitioner's guilt.

The prejudice suffered from counsel actions were enormous giving the fact that petitioner trial rested on the credibility of the witnesses statement and identification was an issue. This evidence showed that the whole neighborhood identified petitioner as the killer. There is no way to cure the harm this evidence caused, eventhough the prosecutor and the trial court tried to fix counsel errors, which is unusual.(N.T.p.172-74 5/22/13) This did not fix counsel's error but only enable him to elicit more damaging hearsay. The evidence violates petitioner Confrontation Clause and can only be seen by the jury as sub-stantial evidence of guilt. Without this evidence there is

7

a reasonable probability of a different outcome.

**C) Trial counsel elicited Raheem Zachary hearsay statement.**

Appellant contends that trial counsel allowed Dt.Gaul to
mention their contact with Mr.Zachary, a non-testifying witness,
instead of sticking to the question. Dt.Gaul stated that
Mr.Zachary refused to go on paper but her supplied information.(
N.T.p.72-73 5/22/13) This implied harmful evidence as it was
used to undermine trial counsel attempt to show lack of corrob-
oration. The prosecutor then proceeded to clarify what type
of information would be in a activity sheet.(N.T.p.147-48 5/22/13

Trial counsel did not stop at this error. Counsel during
Dt.Verrecchio testimony elicited the contents of Mr.Zacahry
statement."Mr.Zachary said he was in the circle on the bench
with Mr.Respes."(N.T.p.181 5/22/13)

Counsel is acting without any strategy. First to allow
Dt.Gaul to imply that Mr.Zachary corroborated evidence. Then
in the next chance allow the exact information be expose to
the jury concerning what Mr.Zachary corroborated is egreious
Counsel allowed this even though counsel claim to be aware of
this evidence.

Petitioner suffered prejudice by this error. This evidence
alleged the truth of the witness statement and bolstered the
prosecutor case. The witnesses recantation was also undermine
because but witness claim not to be in the circle. The jury
using this evidence in their decision making deprive petitioner
of a fair trial.

**D) Counsel elicited prior bad acts of a gun**

8

Trial counsel asked about the weapon in a attempt to show a lack of police effort concerning the murder weapon. Counsel then elicited prior bad acts of a handgun.(N.T.p.229-30 5/22/13) Dt.Verrecchio stated that there was information that came to light about a weapon.

Trial counsel actions were unreasonable, in light of the facts presented concerning the murder weapon. Counsel already showed that the police never looked for the murder weapon or any weapon in this case and that they never had information about the murder weapon.(N.T.p.201-07 5/221/3) Nevertheless, counsel still counsel still asked this prejudicial question which counsel objected to the prosecutor asking a similiar question.(N.T.p.224 5/22/13) Although counsel elicited this evidence counsel still failed to request a cautionary insrtuction or mistrial.

Petitioner contends that the facts surrounding the murder weapon was hotly contested and then to have new evidence about a weapon connected to petitioner was prejudicial and undermined the evaluation of the facts of the case. Moreover, this evidence showed petitioner to be a person who carry guns and who has a disposition to commit criminal acts. This evidence was not given any instruction on how to use this evidence and there is a probability that the jury used the evidence for their fact finding solution or petitioner credibility. Trial counsel also conceded petitioner's guilt which help to show criminal behavior.

### GROUND 4

**Trial counsel was ineffective for failing to impeach witness with exculpatory evidence.**

9

Trial counsel had in his possession exculpatory evidence identifying kamac as the shooter. Had counsel used this evidence to impeach Dt.Gaul, it would have created a reasonable doubt.

Trial counsel elicited that kamac threaten the victim right before the victim was shot.(N.T.p.113-15 5/22/13) This evidence was cumulative as the prosecutor already elicited this evidence during Ms.Hall testimony.(N.T.p.268-70 5/21/13) This issues is centered around the fact that trial counsel asked Dt.Gaul if kamac was ever investigated as the shooter. Dt.Gaul stated "No sir that never came up"(N.T.p.113 5/22/13)

Trial counsel should have at this point introduce Ms.Morris statement to impeach Dt.Gaul claim that kamac name never came up as being the shooter. Ms.Morris statement contain evidence of kamac being identified as the shooter. Moreover, Dt.Gaul took the statement. This would have showed Dt.Gaul committing prejury and having bias for the prosecutor. Trial counsel incompentence allowed the prosecutor to commit in closing argument that there is nobody saying Mr.Brown aka Kamac did this shooting. (N.T.p.59 5/28/13)

Trial counsel omission resulted in prejudice. Petitioner presented a alibi defense and the evidence support kamac being the shooter. The only thing the jury did not get a chance to hear was someone naming kamac as the shooter. Without the jury hearing this evidence, the jury cannot make a reasonable inferenc that kamac did the shooting, which would have created a reasonable doubt concerning petitioner's guilt. The prosecutor highlight this very fact in order to shift guilt off of kamac. This is not a case with overwhelming evidence as petitioner's

10

rested on credibility. There is a reasonable probability that the outcome of trial would have been different if not for counsel errors.

## GROUND 5

**Trial counsel ineffective for failing to object to the prosecutor arguing and bullying the witness.**

The prosecutor sought to bolster the witness out-of-court statement by arguing and bullying the witness about things that was allegedly said to her out of court. Mr.Cunningham's credibility is determinative of guilt or innocence. The D.A calling the witness a liar and using off the record facts without any offer of proof to establish that Mr.Cunningham adapted his statement to her was harmful and improper bolstering.(N.T.p.206-08 5/20/13) This also undermined the witness's recantation.T The prosecutor is seen in the eyes of the jury to uphold the law and to be truthful.

The prosecutor then argued with the witness about facebook pictures. The witness claim that the D.A went through his facebook page. The prosecutor again through the course of them arguing is calling the witness a liar, by claiming that the witness identified people to her personally. ALso the trial court had to stop the D.A from bullying the witness.(N.T.p.214-24 5/20/13)

Trial counsel failure to object was not the result of any strategy. trial counsel allowed the prosecutor to inject facts out side the record to allege appellant's guilt. Moreover, the prosecutor undermined Mr.Cunningham's credibility. The prosecutor offered no evidence of proof and this misconduct was seen as

11

the prosecutor own personally opinion of the witness in the
eyes of the jury.

## GROUND 6

**Trial counsel ineffective for failing to object to the prosecutor
eliciting hearsay evidence of threats and the Trial court giving
a faulty instruction and allowing threat evidence.**

**Prosecutor misconduct**

Petitioner contend that trial counsel failed to challenge
the threat evidence in its entirety. This type of evidence showed
guilt or an admission of guilt by petitioner. Moreover this
evidence was not shown to be connected to petitioner.

The prosecutor during direct-examination of Mr.Cunningham
elicited a death threat.

Q. okay, didn't you tell me in my office on friday that
the defendant brother, Gunna ish, threaten Aaron?

A. No.

Q. You didn't tell me in my office that the defendant's
brother told Aaron, if he does time, then Aaron's dead?

A.No.(N.T.p.227 5/20/13)

The prosecutor then misstated evidence when she implied
Mr.Respes acknowledge threats made towards him.(N.T.p.228 5/20/13

The prosecutor during Mr.Respes testimony again used the
death threat.(N.T.p.147 5/21/13) The prosecutor revealed another
hearsay statement. Allegedly someone yelled snitch towards
Mr.Respes after preliminary hearung.(N.T.p.138 5/21/13)

Petitioner contends that the prosecutor used this evidence
in a inflammatory manner. The evidence was hearsay and there
was offer of proof that this evidence was document. Moreover,
the prosecutor eliciting petitioner's brother alleged death

12

during Mr.Cunningaham testimony showed that the evidence was not used for impeachment purpose but instead to show guilty knowledge. The detectives and the witnesses never said they heard anything about threats.(N.T.pags. 57-60, 217, 155 5/22/13) The prosecutor using this evidence deprive petitioner of a fair trial. The evidence was unreliable and hearsay.

Trial counsel actions were unreasonable and resulted in prejudice. Counsel allowed hearsay to show petitioner guilt. The prosecutor again stated off the record facts without any proof. Last, counsel never had this evidence in discovery but counsel still allowed this evidence to taint peitioner's trial.

**Faulty instruction and admission of evidence**

The trial court abused it discretion by admitting hearsay evidence of threats and acts of intimidation against witnesses. The record will show that none of the witness claim to be threate and the evidence was hearsay. The trial court still admitted this evidence even though the court acknowledge that there is no evidence of these threats except a possible alleged incident where yelled snitch towards Mr.Respes. Court insrtuction:

"...I want to point out to you that the only specific evidence that you had in this case was that someone shouted out after the preliminary hearing as, Mr.Respes was walking down the hall, called him a name and, I beleive snitch..." (N.T.p.112-13 5/28/13)

The trial court gave reliability to Dt.Gaul testimony as Dt.Gaul is the only witness saying this happen. This also can be seen as the trial court own opinion of this evidence. Moreover this evidence should have been excluded from trial as the evidence was shown not to be link to appellant in anyway, even though the D.A still sought to connect appelant. Court:

13

"now first of all, there is no evidence that that was done
on the defendant's behalf, or clearly it was not done by
the defendant...."(N.T.p.12-14 5/28/13)

This instruction still connected petitioner to this evidence
The trial court should have stop at there is no evidence linking
petitioner to this evidence, instead of leaving the jury to
assume that petitioner still could have played a role in getting
this done. The first part of the instruction clearly contradict
the last part of the instruction.

Trial counsel failure to object was unreasonable. The
instruction contradicted clearly establish law which nullified
petitioner's Due Process rights. ALso this evidence cannot be
use for impeachment purpose, as none of the witnesses claimed
that was the reason for there recantation. The Court's instruct-
ion to use the evidence for credibility determination would
ineffect undermine the witness credibility and the facts of
the case.

The evidence is highly prejudicial as the D.A sought through
out trial to establish that petitioner had the neighborhood
and his friends threaten the witnesses.(N.T.pags-at 120, 212
5/21/13)(N.T.p.58 5/28/13) The trial court instruction not only
heighten this concern but it failed to protect petitioner's
credibility. In conclusion the threat evidence never should
have been allowed into evidence.

### GROUND 7

Trial counsel ineffective for failing to object and/or request
a mistrial due to pretrial discovery violation.

14

Petitioner contends that the prosecutor created a trial by ambush, by failing to disclose pretrial discovery materials. The following items were,(1) Relocation memo,(2) Anonymous tips, (3) Threats,(4) Appellant's incriminating statement, and (5) The victim hearsay statement.

(1) Relocation paperwork- The prosecutor used this evidence to impeach Mr.Respes and show that appellant and his friends threaten the witness. Even though Mr.Respes never entered the program and was never threaten.(N.T.p.141-45 5/21/13) The D.A still sought to undermine Mr.Respes testimony by calling Ms.Tobi a witness not listed on this case but who allegedly interviewed Mr.Respes for relocation.(N.T.p.205-09 5/21/13)

During counsel cross-examination of Ms.Tobi it was revealed that the relocation memo contained the prosecutor words of false facts and no evidence concerning Mr.Respes claim of being threaten.(N.T.p.211-12 5/21/13) The prosecutor said petitioner had multiple friends in the courtroom giving the police and witnesses hard looks and was only there to intimidate witnesses from testifying. This evidence never would have tainted the trial had the prosecutor turned this evidence over to the defense.Mandatory disclosure. Pa.R.Crim.P. 573(B)(1)(F)

(2) Anonymous Tips- Trial counsel elicited anonymous tips and rumors identifying petitioner as the killer an supplying the motive.(N.T.pags.at. 50-52, 68-71, 113-14, 125-26, 166-76 5/22/13) This alleged evidence should have been mandatory disclosed to petitioner.Pa.R.Crim.P. 573(B)(1)(D)

The prosecutor acknowledge that she was aware of anonymous information.(N.T.p.49 5/20/13) Moreover, when Dt.Gaul was asked

15

if this info was shared with the D.A office, the detective affirmed.(N.T.p.71 5/22/13) The prosecutor is responsible for her file and the police file. Petitioner would like to believe that counsel would not have elicited this evidence if disclosed.

(3) Threats- The prosecutor elicited a death threat during Mr.Cunningham testimony, which alleged that petitioner's brother threaten to kill Mr.Respes if petitioner does time.(N.T.p.227 5/20/13) The D.A also elicited that someone called Mr.Respes a snitch.(N.T.p.138 5/21/13) and people threatening the witnesses on facebook.(N.T.p.155-56 5/22/13)

The prosecutor knew and anticipated that these witnesses was going to recant.(N.T.p.51 5/20/13) Therefore, this evidence was material and should have been disclosed.

(4) Appellants incriminating statement- Trial counsel elicit a statement that appellant allegedly told Dt.Verrecchio that petitioner takes drugs.(N.T.p.183 5/22/13) This statement should have been mandatory disclosed. Pa.R.Crim.P. 573(B)(1)(B)

(5) The victim hearsay statement- The D.A used this hearsay statement as substantial evidence of guilt. During opening argument,(N.T.p.47 5/20/13), Ms.Hall testimony,(N.T.p.263 5/21/13), and closing argument.(N.T.p.55 5/28/13) This evidence is material

Petitioner contends that trial counsel based his defense and strategy on the evidence present during discovery. Yet, when faced with unknown evidence, counsel just continued to let the prosecutor create a trial by ambush. Counsel never once object but cross-examine without any strategy, which allowed evidence to go unchallenged.

16

Prejudice resulted due to the prosecutor withholding the
evidence from counsel. If counsel had a chance to challenge
the evidence by making a motion in limine, there is a reasonable
probability that the anonymous tips, hearsay threats, and the
victim hearsay statement would have been excluded due to inad-
missible hearsay. Petitioner statement would have been excluded.
ALso the relocation paperwork showed that Mr.Respes did not
enter the program, thus rendering the evidence inadmissible
for impeachment purposes and the facts within the memo revealed
false evidnce.

### GROUND 8

Trial counsel ineffective for failing to object to the prosecutor
frauds upon the court.

Petitioner contends that the record will show that the
prosecutor introduced false acts of intimidation and allowe
witness to testify to the evidence and gave false information
about a weapon to a witness in order to taint petitioner's trial.
A) The prosecutor committed misconduct when she allowed Ms.Tobi
to testify to false evidence.

Petitioner contends that the prosecutor fabricated acts
of intimidation against witness Mr.Respes and allowed Ms.Tobi
to testify to this evidence.

The prosecutor tried multiple times to imply that Mr.Respes
was threaten and intimidated but Mr.Respes denied these facts.
(N.T.p.137-40 5/21/13)

The prosecutor then called Ms.tobi, in order to establish
proof of witness intimidation. The prosecutor asked questions

17

pertaining to the memo, which is sent to the relocation program
an list all acts of intimidation, threats, and facts of the
case.(N.T.p.200-04 5/21/13) The prosecutor by her questioning
is showing that the only way to get referred for relocation
is if someone was threaten or intimidated and the memo contain
these facts.

Trial counsel during cross ask Ms.Tobi who did the referral,
the prosecutor did. Counsel then asked what are the list of
intimidation and facts of the case that Mr.Respes complained
of being threaten. The trial judge clarified this question and
stated that it was permissible.(N.T.p.211 5/21/13) The prosecutor
knew that the facts contained within that memo was not Mr.Respes
words but was the prosecutor own words. The D.A still allowed
the witness to read the memo. Then the facts within the memo
was highly prejudicial and false. (N.T.p.212 5/21/13)

This part of the record shows that the prosecutor fabricated
evidence against the witness, because there was no one in the
courtroom when the witness testified but peitioner's mother.

Trial counsel failure to object or seek a mistrial once
counsel learned about the facts within the memo was unreasonable.
Counsel should have sought to have all evidence concernig threats
remove from the record. The prosecutor set up this evidence
in order to have something to rebut witnesses and show guilt.

The prejudice resulting from the prosecutor words are clear.
The prosecutor words showed petitioner to have guilty knowledge
and planned to have witnesses from testifying. The prosecutor
handling of this evidence in closing argument only heighten
this concern.(N.T.p.70 5/28/13) The D.A word are held to be

18

important in the eyes of the jury.

**B) The prosecutor gave false information about the murder weapon to Dt. Verrecchio.**

Trial counsel questioned the detective about the murder weapon. The witness then replied that there was information that came to light about a weapon. The trial court then asked to see both counsel's at sidebar, which the witness acknowledge might be neccessary. (N.T.p.230 5/22/13)

This issue is found during the judge colloquy. The judge asked the witness about any information he had about the murder weapon. The witness replied that it only used to be hidden in a bush around the nieghborhood. This explanation can be seen as a cover up because when asked before about the murder weapon, the detective replied that their was no information about the weapon. (N.T.p.202-04 5/22/13) Dt. Verrecchio also stated, "I was under the impression that another weapon that he was arrested in between the time of the incident and the time of arrest for another gun incident. (N.T.p.232 5/22/13)

The prosecutor is the one who gave him this information because the prosecutor had this same info in her possession before the colloquy and at side bar. (N.T.p230-31 5/22/13) Then The D.A stated that she thought the same. (N.T.p.233 5/22/13) There is no excuse for the prosecutor to be unaware of the date of the charge when the D.A had this evidence in her possession and it was discovered at the side bar in minutes. Taken from the record and the detective actions, the prosecutor intended to sneak this false evidence in through Dt. Verrecchio testimony.

19

Trial counsel failure to object or seek a mistrial was unreasonable and resulted in prejudice. Ms.Tobi testimonyexposed false facts to the jury about petitioner threatening Mr.Respes and the prosecutor used this evidence in closing argument. More over Dt.Verrecchio testimony injected other crime evidence into the jury fact finding solution. The evidence showed petitioner to be a person who carry guns and has a disposition to commit criminal acts. Also important is the facts that each piece of evidence was used to establish petitioner's guilt. This was not a case with overwhelming evidence and there is a reasonable probability that the outcome was swayed by both false evidence.

### GROUND 9

**Trial counsel ineffective for failing to object to the prosecutor numerous misconducts in closing argument.**

Petitioner contends that the prosecutor engaged in a pattern of misconduct as the prosecutor expressed her personal opinion an belief about the defense witness, guilt of petitioner,injected hearsay into the guilt of petitioner, shifted the burden of proof, and called petitioner a stone cold killer, all of which was highly prejudicial. Trial counsel failed to object.

First, the prosecutor is not allowed to inject her personal opinion into evidence, thereby intruding upon the jury exclusive function of evaluating the credibility of witnesses.

The prosecutor expressed her personal opinion about the defense witness and did so without any supporting facts:

"I want to address the fact that the defense called a lying alibi witness."

"From the second she got up there, she was lying."(N.T.p79-81 5/28/13) The prosecutor continue this argument.

20

The prosecutor also improper commented on the alibi defense and petitioner's credibility. Then implied that the neighbor hood seen petitioner but is scared.(N.T.p.81-82 5/28/13)

The prosecutor undermined the jury credibility assessment of the alibi witness by injecting a pre se procedure on how alibi witnesses should act.(N.T.p.83 5/28/13)

Then the prosecutor unconstitutional shifted the burden of proof.:

"Once he decide to put that on the stand, you can evaluate that because where is Natika if she was really out there? Where is this dooler if he was really out there? Where is this black? Everybody knows each other. You can get these people in, they're not here because it's not true."
(N.T.p.84 5/28/13)

This type of argument is improper. The prosecutor stated that petitioner's alibi is false because these witnesses were not called. This forces petitioner to present these witnesses in order to prove his innocence or have a proper alibi presented.

The prosecutor describing the defense strategy as a desperate attempt and using hearsay evidence to imply that people in the neighborhood believe petitioner did this was misconduct from the prosecutor.(N.T.p.85 5/28/13)

The last error the prosecutor committed was expressing her personal opinion of petitioner by calling petitioner a stone cold killer.(N.T.p.56 5/28/13)

The prosecutor individually and collectively destroyed the confidence of trial. Counsel failure to object was seen as abandonment. These arguments went way beyond oratorial flair. These arguments undermined petitioner's defense. Absent these errors petitioner's trial could have been different.

21

## GROUND 10

**Trial counsel was ineffective for failing to object to the prosecutor improperly focusing the jury attention on the element of fear in order to inflame the passions of the jury.**

The prosecutor's motive to explain away the witnesses recantation was introduced through the fear of the neighborhood and fear witnesses face when they got to testify. Also, the prosecutor elicited hearsay to bolster this fear and the credib-

ility of the out-of-court statements. This misconduct was misleading and resulted in the prosecutor misstating evidence. Moreover, the prosecutor used issues that were irrelevant to to appellant's trial.

Petitioner case has the same theme as Gorden v. Kelly, 2000 U.S.App.LEXIS.1507(6th cir.2000)("The prosecutor attempt to introduce and argue the element of fear constituted prosecutorial misconduct depriving petitioner of Due Process.")

This misconduct premeated the entire trial. Opening argument:

"To understand this case, you have to understand whats it like in the wilson park homes. These are rough projects in south philadelphia, its high crime, high violent crime-everybody knows each other. But there is a culture of no snitching. People are very scared to come forward, especiall in murder case, especially when you live in the projects where everybody knows each other. So even though people in the projects were mad and outraged that the young people took the life of an innocent person, Dwayne Issaccs, even thought people were mad about that the fear is more powerful so people did not want to come forward even though they saw the murder, they did not want to come forward on their own to their the detective."(N.T.p.48-49 5/20/13)

The prosecutor continued this line of argument. (N.T.pags.at. 51-52, 54-57 5/20/13) The prosecutor is diverting the jury from the evidence by arguing this element of fear. Then the prosecutor injected hearsay by implying the unknown people saw this murder

22

but are scared to come forward. also, the D.A suggested that
if the witnesses were not given a chance to recant their state-
ment, something will happen to them. These arguments are based
on no evidence and are improper.

During Mr.Cunningham testimony the D.A implied that the
witness was called a snitch without presenting any evidence.(N.T.
p.225-27 5/20/13) Then during re-direct, the prosecutor attempted
to show intimidation from the neighborhood by implying that
if the witness did not recant he would be known as a snitch
in the neighborhood.(N.T.p.29-30 5/20/13)

During Dt.Bimble testimony, the prosecutor argued about
it being common with people not to come forward as a murder
witness.(N.T.p.78 5/20/13) This whole testimony was irrelevant
and implied that more people seen this murder but are scared
to come forward due to petitioner's associates.

During Mr.Respes testimony the prosecutor again argued
about it not being a good thing to be called a snitch.(N.T.p.119-
20 5/21/13) When the replied that it was a good thing, the D.A
insinuated that petitioner's friends do not want people to come
forward. Moreover the D.A injected her personal opinion regarding
the witness being scared.(N.T.p.141-43 5/21/13)

During Ms.Downing testimony, the D.A bolstered this fear
factor. Ms.Downing repeatedly stated that the witness was scared
even though the witness did not enter the program.(N.T.p.204-
09 5/21/13) The D.A heighten this fear on this last question:

> Q.Okay, and in your five and a half years in this office,
> the number of people you have relocated, have you ever
> come in contact with other witnesses from the area ofwilson?

A. Yes, several.

Q.Are you familiar with n terms of intimidation in that area, are you familiar with that?

A.Yes.(N.T.p.209 5/21/13)

Trial counsel did object but the information was already heard by the jury and the insinuation is clear.

During Dt.Gaul testimony], the prosecutor again installed the fear into the minds of the jury by arguing things witnesses go through when they have to testify. This lead to Dt.Gaul ex- plaining that the fear is real and that he actually had multiple witnesses killed as a result of testifying. Also, that there is always retaliation. These arguments are prejudicial and mis- leading because none of what the detective said happen in this case. The D.A again injected issue not relevant.(N.T.p.144-46 5/22/13)

During closing arguments the prosecutor continued this same theme.(N.T.pags.at. 56-59, 64, 69, 74, 86, 90 5/28/13)

Trial counsel failure to object resulted in prejudice. The prosecutor made petitioner's whole trial about fear. More importantly, the D.A making of her own motive for the witnesses recantation was even more egregious.United State v. Berger, 295 U.S 78(1935) The witnesses never claimed to be threaten or intimidated. Therefoe, the D.A making the recantation about these issues were misstatement of evidence, personal opinion, facts outside the record. Petitioner guilt rested on the credib- ility of the witnesses. There is a reasonable probability that if not for counsel allowing the D.A to inflame the passions of the jury on fear, the outcome would have been different.

24

**Was direct appeal counsel ineffective for failing to challenge the Trial court admission of hearsay evidence.**

Petitioner present to the court a unique set of fact, that if not explained could deny petitioner Due process. First, trial counsel elicited anonymous tips identifying petitioner as the killer. This evidence violated petitioner Confrontation Clause rights. Then without warning the D.A and the Trial court held a side bar conference. Coming out of this side bar the Trial court issued a instruction allowing counsel to introduce this testimonial evidence under the police course of conduct rule in exception to the hearsay rule.

Petitioner acknowledges that trial counsel did not object nor could he as counsel is the one eliciting this evidence. Therefore, the prosecutor and trial counsel role changed at that moment, meaning the D.A object and the trial court made a ruling.

The trial court ruling was only able to be challenge on direct review by direct appeal counsel. The trial court answered this issue but the Superior Court denied the issue due to counsel· failure to object at trial. Under state law this is correct but this is a unique set of facts that warrant review.

This evidence was not allowed to be admitted as it was testimonial and violated the U.S.C 6th amendment. Even under the PA.Supreme Court precedent, this evidence should not have admitted. Commonwealth v. Yates Jr.,613 A.2d 542,(1992)(citing Commonwealth v. Palsa, 555 A.2d 808(1989) Moreover, the curative instruction cannot cure the harm caused, as this is a trial

25

was identity was an issue and to have numerous unknown witnesses identifying petitioner a s the killer destroyed the confidence of the trial.(N.T.pags.at. 50-53, 68-71, 113-14, 125-26, 166-76 5/22/13) Had direct appeal counsel raised this issue on appeal the results of petitioner appeal would have been different.

## GROUND 12

Petitioner's Due Process rights were violated due to the state court deny relief without a hearing on the after-discovered evidence resented in suuport of properly raised issue.

Petitioner discovered evidence of Dt.Pitt's behavior towards witnesses during interrogation. This evidence helps to support the properly raised issue under Ground 1(C). The evidence did not become known until after petitioner's PCRA petitioner was denied. Therefore, petitioner filed a application for relief and remand due to this after-discovered evidence within the Superior Court. The Superior Court denied this issue due to the lower court analysis for denying Ground 1(C).

This was error as the lower court never got a chance to review this evidence. Their analysis is based on a limited amount of evidence. Moreover, this evidence satisfies the after-discovered prongs which requires a hearing at minimum in order to develop a factual record and allow petitioner present evidence to prove his innocence. First, the evidence was discovered only after Judge Sarimina opened Dt.Pitt's internal affairs file. Second, the evidence is not being used solely for impeachment purposes as the evidence supports petitioner's defense and shows a common pattern of behavior.Pa.R.E. 406 Det.Gaul also brought to the jury attention character testimony and the fact that

there was no complaint made to internal affairs.(N.T.p. 86-91
5/22/13) The fact that there are multiple reports of the similiar
acts reported within Dt.Pitt's internal affair file, shows that
this evidence has probative value. Third, the evidence is not
cumulative as there was no evidence of Dt.Pitt's behavior intro-
duced at trial besides Mr.Cunningham's recantation testimony,
which only left the jury with a he say she say credibility deter-
mination. Last, the evidence is exculpatory and had the jury
heard this evidence, there is a reasonable probability that
the jury would have viewed the statement as corrupt. Then this
would have raised a reasonable doubt, likely changing the outcome
of trial, as petitioner trial depended on the credibility of
the witnesses initial statement.

More importantly, there was a petitioner granted relief
on the same issue presented to the state courts. Commonwealth
v. Dwayne Thorpe,(CP-51-CR-0011433-2008)

### GROUND 13

**Petitioner's Due Process rights were violated due to the
Cumulative effect of the errors complained of herein.**

Petitioner contends that individually these errors were
prejudicial and warrant relief on their own. If the court do
not think that the errors warrant relief individually, then
collectively petitioner's rights were violated.

Trial counsel abandoned petitioner at trial as counsel
failed to investigate and present witnesses that would have
testified to exculpatory evidence evidence of a different shooter
Moreover, counsel failed to present evidence that would have
destroyed the witness initial statement.

27

Then counsel opened the door to a wide range of damaging evidence that did nothing but bolster the prosecutor case. This was clear abandonment as counsel did not mind eliciting this damaging evidence. Lastly counsel allowed the prosecutor to introduce hearsay, off the record evidence that bolstered the witness statement, commit discovery violation and deceive the court.

There is a reasonable probability that if not for the cumu-lation of trial counsel's error, prosecutorial misconduct, and petitioner being allowed to present after-discovered evidence the results of petitioner's trial would have been different.

## CONCLUSION

Petitioner avers that the above state grounds are reviewable under the Strickland v. Washington standard of ineffectiveness of counsel and the Brecht standard for harmless error if it implies. More over these issues satisfy the 28 U.S.C. sec.2254(D) (1)&(2)

Petitioner asks the court to please allow petitoner to submit a Memorandum of Law in support of these issues, wherein petitioner will cite case law to support petitioner's constitut-ional violations and show how the Superior Court error under 28 U.S.C. sec.2254(D)(1)&(2).

WHEREFORE, based on the above Christopher Goodwin, the petitioner, respectfully moves to be release or the award of a new trial. Alternatively, appoint counsel and conduct an evid-entiary hearing to resolve the factual disputes.

PRO SE REPRESENTATION

28

# APPENDIX A

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      : CP-51-CR-0012214-2011

                                              :

         v.                                     :

**FILED**

OCT 2 4 2016

CHRISTOPHER GOODWIN                    :

Criminal Appeals Unit
First Judicial District of PA

## ORDER AND OPINION

**McDermott, J.**                                                         **October 24, 2016**

## Procedural History

On August 2, 2011, the Petitioner, Christopher Goodwin, was arrested and charged with
Murder and related offenses. On May 20, 2013, the Petitioner appeared before this Court and
elected to be tried by a jury. On May 28, 2013, the jury convicted the Petitioner of First-Degree
Murder, Carrying Firearms on a Public Street in Philadelphia, and Possession of an Instrument of
Crime ("PIC"). On that same date, this Court imposed the mandatory sentence of life
imprisonment for First-Degree Murder and concurrent sentences of one to two years for Carrying
Firearms on a Public Street in Philadelphia and PIC, for a total sentence of life imprisonment.

The Petitioner filed a Notice of Appeal, and on July 14, 2014, the Superior Court affirmed
his judgment of sentence. On January 21, 2015, the Pennsylvania Supreme Court denied the
Petitioner's Petition for Allowance of Appeal. On June 15, 2015, the Petitioner filed a timely *pro
se* Post-Conviction Relief Act ("PCRA") petition. On April 11, 2016, PCRA Counsel entered his
appearance. On July 8, 2016, the Petitioner filed a *pro se* Motion for Appointment of New PCRA
Counsel. On August 10, 2016, PCRA Counsel filed a no-merit letter pursuant to *Commonwealth
v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) and a motion to withdraw. On September 6,

2016, the Petitioner filed his *pro se* Response and Objection to Counsel's "Finley No-Merit"

Letter and Motion to Amend.

On September 22, 2016, upon independent review, this Court found the Petitioner's claims

meritless, filed a Notice of Intent to Dismiss under Pa.R.Crim.P. 907, and denied the Petitioner's

Motion for Appointment of New PCRA Counsel. On October 11, 2016, this Court received the

Petitioner's *pro se* response to this Court's 907 Notice.

**Facts**

On direct appeal, the Superior Court adopted this Court's Statement of the facts, which

were summarized as follows:

> On June 24, 2011, Lekkir Brown was shot during a home invasion
> in his house located just outside of the Wilson Park project in
> Philadelphia. According to Lisa Hall there was a rumor in the Wilson
> Park neighborhood that her nephew, Rashul Isaacs, was the shooter
> because a few days before Lekkir Brown was shot, Brown had shot at
> Rashul Isaacs.
>
> On June 26, 2011, at about 12:18 a.m., in response to a radio call,
> Police Officer Thomas Bimble arrived at the 2600 block of Jackson
> Street in the Wilson Park project. A group of people had formed at
> the corner of Jackson and 27th Streets where there is a small circular
> park. Officer Bimble found Dwayne Isaacs lying in the circle park,
> unresponsive, with blood coming from his head. Medics arrived
> within minutes and pronounced Mr. Isaacs dead on the scene at 12:31
> a.m.
>
> A little over an hour after the murder, Police Officer Brian Stark
> of the Crime Scene Unit located two bullet jacket fragments and two
> bullet strike marks in the ground under Mr. Isaacs' body. The bullet
> strike marks indicated a weapon was fired down toward the ground.
>
> According to Dr. Marlon Osbourne, an expert in forensic
> pathology, Mr. Isaacs suffered seven gunshot wounds and had an
> abrasion on his forehead. The abrasion on Mr. Isaacs' forehead was
> consistent with falling to the ground. Mr. Isaacs was shot in the neck,
> chest, flank, forearm, hand, and finger. The gunshots severed Mr.
> Isaacs' spinal cord, and hit his kidney and liver. Because the wound
> to the finger and the anterior neck were possibly reentry wounds, Dr.
> Osbourne concluded that Mr. Isaacs was shot with either five or six
> bullets. Dr. Osbourne recovered two bullet fragments from Mr.
> Isaacs' neck and a bullet from Mr. Isaacs' abdomen.

2

According to Police Officer Ernest Bottomer, an expert in the area of ballistics and firearms identification, the two bullet jackets recovered from the scene, and the bullet, bullet core, and bullet jacket recovered by the medical examiner's office from the decedent's body were either .38 or 9-millimeter caliber and were likely fired from a revolver. The bullet jackets recovered from the scene and the bullet recovered by the medical examiner's office were fired from the same firearm, which Officer Bottomer concluded was most likely a .38-caliber revolver.

On July 21, 2011, Andre Cunningham gave a statement to police. In his statement, Cunningham explained that on June 26, 2011, he had just left a speakeasy and was walking near the circle park. The defendant hopped a fence by the alleyway, walked into the park, and asked Raheem Zachary and Aaron Respes if they had any "Xannies." As Mr. Isaacs walked down the pathway of the park, Cunningham saw the defendant shoot Mr. Isaacs in the head. Mr. Isaacs fell to the ground and while the defendant walked away he continued shooting Mr. Isaacs about four more times. Cunningham ran off and when he returned he saw Mr. Isaacs still lying in the park surrounded by blood.

On June 3, 2013, Cunningham gave an inconsistent statement to a defense investigator. In this statement, Cunningham claimed that he did not see the murder, but only told the police what they wanted to hear. At trial, Cunningham denied witnessing the murder, but stated that he was a couple blocks away on Taney Terrace when he heard gunshots.

At the time of the murder, Aaron Respes was walking past the circle park on the corner of 27th and Jackson Streets when he heard a single gunshot. Respes turned and saw the defendant and Mr. Isaacs standing in the circle park. While running away, Respes heard six or seven more shots. Respes identified the defendant as Mr. Isaacs' shooter in his statement given to police on July 22, 2011 and at the preliminary hearing on October 25, 2011. However, at trial Respes said he was unsure who shot Mr. Isaacs. After the preliminary hearing, Respes and his mother accepted relocation services from the District Attorney's office because he had been threatened.

According to Anara Brown, a defense alibi witness, on June 25, 2011, from about 10:00 p.m. until around midnight, she was with the defendant and about ten other people at 2620 Jackson Street, less than a block away from where Mr. Isaacs was shot, having a party in the street. While Ms. Brown and the defendant were at 2620 Jackson Street, they heard gunshots and Ms. Brown ran inside the house. When Ms. Brown came back outside, the defendant was still there. They then walked to the circle park to see who was shot.

Although the jury did not credit Ms. Brown's alibi testimony, she did confirm the motive for the murder. Ms. Brown corroborated Ms. Hall's testimony that a few days prior to the murder, Ms. Brown's house was burglarized during which Lekkir Brown was shot.

*Commonwealth v. Christopher Goodwin*, 2009 EDA 2013 (Non-Precedential Decision).

## Discussion

The Petitioner raises numerous issues in his voluminous PCRA filings. Though the Petitioner characterizes most of his issues as allegations of trial counsel ineffectiveness, the vast majority of his averments are incomprehensible. In an attempt at clarifying the Petitioner's issues, this Court has organized each of the Petitioner's issues by topic so that any cognizable issues may be addressed.

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing

4

to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commownealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

"Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (*quoting Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010)). "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* "A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued." *Commonwealth v. Davido*, 106 A.3d 611, 629 (Pa. 2014) (*quoting Sneed*, 45 A.3d at 1107).

## Trial Counsel's Failure to Adequately Prepare

The Petitioner raises two separate claims that trial counsel was ineffective for failing to adequately prepare for trial. He first asserts that trial counsel was ineffective for failing to investigate and interview witnesses Tiara Young and Yvette Morris, who would have testified that an individual named Leroy Brown, aka "Camac," shot the decedent. "When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Pierce* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." *Commonwealth v. Matias*, 63 A.3d 807, 810–811 (Pa. Super. 2013) (*quoting Sneed*, 45 A.3d at 1108–1109). Counsel will not be found ineffective for failing to call a witness "unless the petitioner can show that the witness' testimony would have been helpful to the defense.

5

A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy. *Sneed*, 45 A.3d at 1109. A petitioner cannot succeed on this claim if the witness' testimony "would not have materially aided him. In such a case, the underlying-merit and prejudice prongs of the *Pierce* test logically overlap." *Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016) (*quoting Commonwealth v. Baumhammers*, 92 A.3d 708, 725 (Pa. 2014)).

The Petitioner failed to establish that the witnesses exist and were available to testify. The Petitioner fails to attach an affidavit or certification from Young or Morris summarizing their testimony, their willingness and ability to testify, or that trial counsel knew or should have known of their existence. Instead, the Petitioner attaches Morris' police statement to his *pro se* petition, wherein Morris states that her friend Tiara called her after the shooting and said that "the rumors on the street are that Camac shot Dwayne." Not only does the Petitioner fail to meet the *Pierce* requirements, but Young's knowledge of the shooting, based on the statement, constituted nothing more than inadmissible hearsay, precluding trial counsel from calling her to testify.

Next, the Petitioner argues that trial counsel failed to adequately prepare for trial because he failed to discover Respes' relocation paperwork through independent investigation. Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. *Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009) (*citing Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000)). To support his claim, the Petitioner makes a boilerplate assertion that trial counsel relied solely upon the Commonwealth's file when preparing his case. Even if his assertion that trial counsel relied on the Commonwealth's discovery is true, the Petitioner fails to establish prejudice. At trial, Respes testified that he did not participate in the witness relocation program and instead used it to find his mother a new home. N.T. 5/21/2013 at 139. The relocation paperwork in question was signed by

6

Respes' mother. *Id.* at 146, 205. While this evidence could be used to impeach Respes, it does not speak to the Petitioner's guilt or innocence, precluding his claim.

## Failure to Challenge Admission of Withheld Evidence

The Petitioner claims that trial counsel ineffectively failed to object after the Commonwealth allegedly withheld evidence of: (1) Respes' relocation paperwork; (2) photographs from Respes' Facebook page; and (3) tips from anonymous sources naming the Petitioner as the shooter.

The Petitioner alleges that trial counsel was ineffective by failing to challenge the admission of documents concerning Respes' relocation on the grounds that (1) it was not timely disclosed to the defense; and (2) the Commonwealth fraudulently manufactured a related memorandum. At trial, Respes unexpectedly recanted his prior identification of the Petitioner as the shooter. The Commonwealth later presented a declination form and a letter from the Attorney General's Office confirming relocation as evidence that Respes participated in a witness relocation program. Commonwealth Exhibit C-29; C-30. The Commonwealth then called Witness Coordinator Tobi Downing to explain that the DA's office submitted a memorandum on October 25, 2011 that led her to interview and seek alternative housing for Respes' and his mother.[1] N.T. 5/21/2013 at 198–212. Nothing on the record indicates that the Commonwealth failed to disclose discovery that Respes participated in a witness relocation program, as the documents were included on the Commonwealth's exhibit list and submitted as evidence. The Petitioner further fails to demonstrate a reasonable basis for trial counsel to object. The evidence is probative to impeach Respes and explain his state of mind and his reasons for recanting at trial. Moreover, the

---

[1] In his *pro se* petition, the Petitioner characterizes Downing's testimony as fraudulent and accuses the Commonwealth of prosecutorial misconduct for calling her on the stand. The memorandum itself was never submitted as evidence, though Downing testified that the memo contained a request to interview Respes' and a brief summary of the threats and intimidation he faced.

Petitioner claims that the memorandum is fraudulent solely on the basis that it was composed by someone in the DA's office.

Next, the Petitioner claims that the Commonwealth violated his due process rights by failing to timely disclose photographs posted to Facebook. The Petitioner further believes that trial counsel was ineffective for failing to object to the admission of this evidence under Pa.R.Crim.P. 573. The Commonwealth discovered the photographs four days before trial, and the photographs only became relevant after eyewitness Andre Cunningham recanted his police statement at trial. At trial, Cunningham recanted his statement in which he implicated the Petitioner as the shooter. On the Thursday before trial, Cunningham provided the Commonwealth with access to his Facebook page, where the Commonwealth discovered several photographs of Cunningham and the Petitioner together, indicating a close friendship. This evidence is not favorable to the Petitioner, as it is not exculpatory, nor does it impeach Cunningham's police statement. Moreover, the Petitioner fails to demonstrate how disclosure of these photographs would alter the result of the trial.

The Petitioner further claims that trial counsel should have objected after the Commonwealth allegedly withheld evidence that anonymous sources identified the Petitioner as the shooter. A prosecutor's obligation to disclose encompasses only information known or readily ascertainable by the government actors involved in the prosecution. *Weiss*, 81 A.3d at 792. The Petitioner presents no evidence that the Commonwealth failed to disclose such evidence, and fails to adequately describe the evidence. Trial counsel was the first to raise the issue of anonymous sources when he cross examined Detective Gaul, and did so to attack his credibility. *See, infra.* The Petitioner therefore fails to prove that the Commonwealth withheld this information.

8

**Evidentiary Issues**

The Petitioner argues that trial counsel prejudiced him by eliciting evidence that police used anonymous tips to identify the Petitioner as a suspect. Throughout the trial, trial counsel sought to establish that another individual, Camac, murdered the decedent in retaliation over a prior shooting. To this end, trial counsel sought to characterize the Commonwealth's reliance on anonymous tips as inadequate and impossible to verify. *See* N.T. 5/22/2013 at 63–69. This was a reasonable trial strategy that does not rise to the level of ineffectiveness. *See Sneed*, 45 A.3d at 1107.

The Petitioner asserts that trial counsel was ineffective for failing to object or seek a mistrial after the Commonwealth elicited alleged hearsay evidence of the victim's then existing state of mind. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). A notable exception to the hearsay rule is the "state of mind" exceptions, permitting the admission of "[a] statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." Pa.R.E. 803(3).

Out of court statements may be admitted because they are non-hearsay, admissible for some relevant purpose other than to prove the truth of the matter asserted. *Commonwealth v. Koch*, 106 A.2d 705, 715 (Pa. 2014) (*citing Commonwealth v. Ali*, 10 A.3d 282, 315–316 (Pa. 2010)). "Generally, out of court statements by homicide victims are admissible when they are relevant to show proof of motive or malice." *Commonwealth v. Kunkle*, 79 A.3d 1173, 1185 (Pa. Super. 2013) (*citing Commonwealth v. Luster*, 71 A.3d 1029, 1041 (Pa. Super. 2013)).

Evidence of the decedent's fear prior to the shooting is clear evidence of the Petitioner's motive. Put into context, the decedent feared Camac and the Petitioner because they were

9

convinced that the Petitioner's cousin, Rashul, shot Camac's son Le-Le during a home invasion. N.T. 5/21/2013 at 260–264. Not only was this motive evidence relevant to the Commonwealth's case against the Petitioner, but this evidence was equally relevant to the Petitioner's defense that Camac was the actual shooter. Because this evidence was not offered for the truth of the matter, but rather to establish the Petitioner's motive, it was admissible as non-hearsay and trial counsel had no reasonable basis to object.[2]

### Threats and Intimidation

The Petitioner raises four distinct issues concerning evidence of intimidation and threats made against Commonwealth witnesses Cunningham and Respes, alleging that trial counsel was ineffective for: (1) failing to challenge the Commonwealth's line of questioning concerning threats and intimidation; (2) eliciting testimony from Detectives Verrecchio and Gaul concerning threats and intimidation; (3) failing to request a mistrial or object to prosecutorial fraud with respect to Detective Gaul's testimony; and (4) permitting the Commonwealth to cumulatively prejudice the Petitioner with evidence of threats and intimidation.

The Petitioner avers that trial counsel was ineffective for failing to challenge the Commonwealth's questioning of Cunningham and Respes about threats and intimidation. Trial counsel had no basis to object, as the Commonwealth elicited the challenged testimony to explain the witnesses' recantation at trial. The Petitioner relies on the proposition discussed in *Commonwealth v. Carr* that "threats by third persons against public officers or witnesses are not relevant unless it is shown that the defendant is linked in some way to making the threats." 259 A.2d 165, 167 (Pa. 1969). While the Petitioner presents a correct statement of law, he ignores the

---

[2] PCRA Counsel incorrectly asserts that, under *Commonwealth v. Stallworth*, 781 A.2d 110, 117–118 (Pa. 2001), evidence of the decedent's fear prior to the shooting was admissible under the Rule 803(3) "state of mind" exception. If the evidence was offered merely to show the decedent's state of mind prior to the shooting, the Petitioner would be correct in averring that the evidence was inadmissible hearsay without an exception, as the decedent's state of mind was not at issue during the trial. *See Thornton, supra.*

controlling precedent that the "rule refers to the relevance of a threat as it bears on the issue of guilt. [Where] the purpose was not to establish guilt, but to explain a prior inconsistent statement," the use is permissible. *Commonwealth v. Ragan*, 645 A.2d 811, 824 (Pa. 1994) (*quoting Carr*, 259 A.2d at 167); *Commonwealth v. Collins*, 702 A.2d 540, 543–544 (Pa. 1997). Here, the Commonwealth's evidence concerning threats and intimidation against Cunningham and Respes was proper to explain the inconsistency between their police statement and recantation at trial. Trial counsel had no reasonable basis to object.

The Petitioner next claims that trial counsel was ineffective for eliciting testimony from Detectives Gaul and Verrecchio about alleged threats made to Commonwealth witnesses Cunningham and Respes. N.T. 5/22/2013 at 60, 214–216. Trial counsel sought to diminish the Detectives' credibility concerning these threats by establishing that evidence of these threats were undocumented and thus unverifiable. This was a reasonable response to the Commonwealth's evidence. Based on his argument, it appears as though the Petitioner would have preferred that trial counsel remain silent and allow the Commonwealth's intimidation evidence stand unchallenged.

The Petitioner next claims that the Prosecutor committed fraud by permitting Detective Gaul to testify about threats made against witness Respes and that trial counsel was ineffective for failing to request a mistrial. Although the Petitioner's argument is unclear, he appears to argue that Respes never faced any credible threat, that Detective Gaul lied about the threats on the stand, and the Commonwealth attempted to cover it up. The only evidence the Defendant uses to support his claim is a citation to N.T. 5/22/2013 at 60–63, which transcribes trial counsel's cross examination of Detective Gaul. During this cross examination, trial counsel attacked Detective Gaul's credibility by establishing that the Commonwealth did not separately document any threats. *Id.* at 57–63. Accordingly, the Petitioner presents no evidence of fraud.

11

The Petitioner avers that trial counsel was ineffective for failure to object several instances

where the Commonwealth raised the issue of Cunningham's and Respes' fearful unwillingness to

testify. Although he is unclear, the Petitioner appears to claim that all the threat and intimidation

evidence cumulatively prejudiced him. As discussed *supra*, eyewitnesses Cunningham and

Respes recanted their prior testimony from the witness stand. The Commonwealth was permitted

to question the credibility of Cunningham's and Respes' trial testimony by introducing evidence to

explain the inconsistencies, including evidence of threats and intimidation. This Court issued a

proper curative instruction to mitigate any prejudicial effect. *See infra.* The Petitioner fails to

demonstrate prejudice.

## Additional Challenges to Detective Gaul's and Verrecchio's Testimony

The Petitioner avers that trial counsel failed to adequately cross-examine Commonwealth

witnesses Detectives Gaul and Verrecchio concerning exculpatory evidence indicating Camac as a

possible shooter. Trial counsel cross-examined Detective Gaul about evidence tending to show

Camac's motive to murder the decedent and his presence at the crime scene immediately after the

shooting:

> Q Do you know of any significance of Kamac to this case?
> A I believe Kamac was related to one of the parties in this case. I
> could be wrong, but I believe he was related to one of the parties in
> this case.
> Q Okay. Was he investigated?
> A As far as being involved?
> Q Being involved in the shooting of Mr. Isaacs.
> A He might have been attempted to be located or at some point
> some detective might have tried to locate him and talk with him, but
> as far as him being a shooter, is that what you mean?
> Q Yeah.
> A No, sir, that never came up.
> Q So nobody investigated him as being the shooter?
> A Well, the shooting was investigated. I don't want to say nobody
> investigated him as a shooter. The whole shooting was investigated,
> and a person of interest was identified.

12

Q Well, did you have information that the sister of Mr. Isaacs had indicated that Mr. Isaacs told him he had an altercation with Mr. Brown shortly before he was killed? Did you know that?

A That could have been within the investigation. I'm not sure. Now, there was two Mr. Isaacs. You're referring to the one that shot, alleged, that was the rumor in the neighborhood.

Q I'm talking about Mr. Dwayne Isaacs having an altercation with Kamac shortly before he was killed. Do you think that might be important to look into?

A Like I said, the investigation is through a process and through steps. There are persons of interest that come up. The one thing that was consistent with this investigation was that Christopher Goodwin, also known as Gunna, was responsible for the shooting.

Now, as far as what steps were taken as far as who was cleared and other names that come up, I wouldn't know that.

Q Well, since Mr. Cunningham placed Mr. Brown there, according to this statement that this was what he said, might it not be important that Mr. Isaacs, the decedent, had said to his sister just before going out to the projects and getting killed, Kamac was going to fuck me up? Would that be important to look into?

A Well, Mr. Cunningham didn't put Kamac out there at the time of the murder. If you refer to the interview, he puts him out there after the murder he seen him. He said the whole project comes out.

Do you want to refer to the interview?

Q Sure. I mean, it says he was out there.

A I believe it indicates that he was out there after the murder. I mean, if you want to refer to it, if you want to go through it...

Q I'll just put it in context. Let me read your exact question and answer. It's on page 2.

**Question:** Mr. Cunningham, was there anyone else that you recognized out there at the time of the murder?

Do you see that question?

A I believe that question's on page 3.

Q Page 3, I'm sorry, page 3.

A Yes, sir. I'm with you, yes.

Q **Answer:** Kamac was out there. I seen him afterward, though. I don't know where he was when it happened. I just seen walking around a lot afterwards.

N.T. 5/22/2013 at 113–115. The Petitioner's claim is without merit, as trial counsel clearly and unequivocally raised the issue of whether Camac, and not the Petitioner, was the shooter.

The Petitioner argues that trial counsel was ineffective for eliciting prior bad acts testimony of the Petitioner's drug abuse and an unrelated gun charge. During cross-examination,

13

Detective Verrecchio testified that, immediately prior to the murder, the Petitioner approached

witnesses Zachary and Respes and asked them for Xanax. N.T. 5/22/2013 at 183. When

Detective Verrecchio further revealed that the police knew that the Petitioner used Xanax, trial

counsel asked whether the Petitioner gave that information to police, and Detective Verrecchio

confirmed that he did. *Id.* Despite the Petitioner's contention, trial counsel did not reveal that the

Petitioner had a drug problem. Instead, the Commonwealth elicited this information during its

direct examination of Cunningham, who, in his police statement, recounted that the Petitioner

asked Zachary and Respes for Xanax prior to the murder. Trial counsel used this testimony to

establish that Detectives Verrecchio and Gaul failed to corroborate much of the evidence they

gathered in their investigation:

> **[Det. Verecchio:]** He didn't realize he left the speakeasy. Gunna
> stopped first and was talking to two boys who were sitting on the
> bench. We've identified them as Raheem and Aaron. He was asking
> them if they had any Xannies. We know he uses Xannies.
>
> **[Mr. Harrison:]** Who do you know uses Xannies?
>
> A Gunna, your client.
>
> Q Oh, did he tell you that?
>
> A Yes.
>
> Q When did he tell you that?
>
> A When he was arrested.
>
> Q Did you write that down anywhere?
>
> A No.
>
> Q Why not?
>
> A It wasn't --
>
> Q It wasn't important?
>
> A He wasn't interviewed.
>
> Q Wait a minute. Here's a man -- you got a statement from
> somebody who says this guy stopped and asked for Xannies. You're
> telling me when he was arrested he tells you he uses Xannies. You
> don't think that's important enough to write down and document and
> put in your doggone file?
>
> A No. It had nothing to do with this particular case.
>
> Q What do you mean it didn't have nothing to do? It had all to do
> with it, didn't it?

N.T. 5/22/2013 at 183-184.

The Petitioner presents dual claims challenging testimony about his unrelated firearms charge, that: (1) trial counsel was ineffective for eliciting that evidence, and (2) the prosecutor committed fraud by permitting Detective Verrecchio to testify about it. Neither trial counsel nor the Commonwealth elicited this evidence before the jury. During his cross-examination of Detective Verrecchio, trial counsel asked about police efforts to recover the murder weapon in this instant case. N.T. 5/22/2013 at 229–230. Detective Verrecchio, an experienced witness, signaled to the Court that a sidebar discussion was necessary, after which the jury was removed from the courtroom. *Id.* at 230–231. When it appeared that Detective Verrecchio had information about an unrelated charge, this Court colloquied Detective Verrecchio outside of the jury's presence, preventing the jury from being tainted by prejudicial testimony. The Petitioner's claim has no merit.

The Petitioner further contends that trial counsel bolstered Detective Verrecchio's testimony that the Petitioner was rumored to have killed the decedent because he could not locate an alternative target. During cross-examination, trial counsel sought to refute this claim by arguing that it was unsubstantiated:

> Q So the word was that my client wanted to get to -- couldn't get to Rahsul, so he was going to get Shank instead?
> A It was just a rumor, Counsel. Like I said, it was just word on the street at that time.
> Q Well, you interviewed Mr. Cunningham. We have that interview; right?
> A Correct.
> Q That's not mentioned anywhere in there, is it?
> A No, he did not say that.
> Q Aaron Respes was interviewed; right?
> A Correct.
> Q That's not mentioned anywhere in there?
> A That's correct.
> Q Zachary Hawkins is interviewed; right?
> A Correct.
> Q That ain't mentioned nowhere in there; right?

15

> **A** I can't recall. I'm pretty sure Zachary did provide that information. Whether or not it's actually in the written interview or not, I can't say.
>
> **Q** If I told you it wasn't in the written interview, would you disagree with me?

N.T. 5/22/2013 at 170–171. Trial counsel's line of questioning was reasonably suited to attack Detective Verrecchio's credibility and call the adequacy of his investigation into question. Trial counsel cannot be held ineffective based on this claim.

The Petitioner next argues that trial counsel prejudiced him by eliciting testimony from Detectives Verrecchio and Gaul about the location of the murder weapon and an interview with Raheem Zachary. Trial counsel asked Detective Verrecchio that "you wouldn't know whether the [Petitioner] is dumb enough to leave a gun someplace unless you look, right." N.T. 5/22/2013 at 230. Although the Petitioner challenges this statement for painting him as guilty, trial counsel clearly sought to raise an inference of reasonable doubt by challenging the thoroughness of the Commonwealth's investigation into the murder weapon. Trial counsel employed a reasonable strategy to ultimately establish that the Commonwealth failed to recover the murder weapon.

The Petitioner further alleges that trial counsel ineffectively permitted the jury to infer guilt by eliciting that Raheem Zachary provided an unwritten, hearsay police statement. Although the contents of Zachary's statement were not elicited at trial, the Petitioner claims that the jury inferred that any information Zachary gave to police was harmful to him. The mere occurrence of an unrecorded interview does not permit a jury to infer guilt. Furthermore, this Court reminded the jury that their deliberations were limited only to the evidence presented at trial, and the jury is presumed to follow such instructions. *See* N.T. 5/28/2013 at 94–95; *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011).

16

## Prosecutorial Misconduct

The Petitioner claims that trial counsel was ineffective for failing to object or request a mistrial for alleged prosecutorial misconduct throughout closing arguments. A prosecutor's closing remarks constitute reversible error only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Commonwealth v. Tedford*, 960 A.2d 1, 33 (Pa. 2008). While it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses, the prosecutor may comment on the credibility of witnesses and respond to defense arguments with logical force and vigor. *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (*citing Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005)). "Comments grounded upon the evidence or reasonable inferences therefrom are not objectionable, nor are comments that constitute oratorical flair." *Sneed,* 45 A.3d at 1110 (*citing Hutchinson*, 25 A.3d at 307)). Allegedly improper remarks are reviewed in the context of the closing argument as a whole. *Sneed*, 45 A.3d at 1110 (*citing Commonwealth v. LaCava*, 666 A.2d 221, 235 (Pa. 1995)). "The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a flagrant abuse of discretion." *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003) (*citing Commonwealth v. Cottam*, 616 A.2d 988, 997 (Pa. Super. 1992)).

The Petitioner also alleges that the prosecutor committed misconduct in her closing statement by characterizing the Petitoner's alibi witness as dishonest, shifted the burden of proof, and called the Petitioner a "stone cold killer." Throughout the trial and his closing argument, trial counsel sought to inculpate the Commonwealth's investigation into the decedent's murder as incomplete and insufficient to reveal the truth. Moreover, trial counsel implied that several Commonwealth witnesses were coerced into delivering a false identification. At several points

17

during his closing argument, trial counsel branded Homicide detectives as liars. N.T. 5/28/2013 at 23, 25–26, 32–33, 41, 44–45.

In light of this, the prosecutor's argument concerning the veracity of the Petitioner's alibi witness is a logical and vigorous response. The prosecutor's comment that the Petitioner's associates Natika Hawkins, Dooler, and Black were not at trial is a logical attack on alibi witness Brown's credibility, not an impermissible shifting of the burden of proof. *See Judy*, 978 A.2d at 1020. Finally, the prosecutor's comment referring to a "stone cold killer," is nothing more than oratorical flair employed to explain the eyewitnesses motivation for speaking to police. *Id.* at 56.

## Jury Instruction

The Petitioner's next two ineffectiveness claims concern this Court's jury instruction regarding evidence of threats and intimidation: that trial counsel was ineffective for failing to (1) object to this Court's instruction and (2) propose his own curative instruction. When reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, to ascertain whether the instruction fairly conveys the legal principles at issue. *Commonwealth v. Barnett*, 121 A.3d 534, 545 (Pa. Super. 2015) (*citing Commonwealth v. Williams*, 732 A.2d 1167, 1187 (Pa. 1999)). "An instruction will be upheld if it clearly, adequately, and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law." *Id.* (*quoting Commonwealth v. Spotz*, 759 A.2d 1280, 1287 (Pa. 2000)).

Trial counsel's ineffectiveness for failing to object to a court's allegedly erroneous instruction is determined by the *Pierce* "actual prejudice" measurement, and a petitioner must show there is a reasonable probability that, but for counsel's error or admission, the result of the proceeding would be different. *Commonwealth v. Spotz*, 84 A.3d 294, 321 (Pa. 2014) (*citing Commonwealth v. Koehler*, 36 A.3d 121 (Pa. 2012)). Counsel will not be deemed ineffective for

18

failing to object to a jury instruction given by the court where the instruction itself is justifiable and not otherwise improper. *Commonwealth v. Eichinger*, 108 A.3d 821. 845 (Pa. 2014) (*citing Commonwealth v. Rainey*, 928 A.2d 215, 243 (Pa. 2007)). The decision whether to seek a jury instruction implicates a matter of trial strategy, and counsel will not be deemed ineffective unless a petitioner shows that trial counsel did not have a reasonable strategy for failing to request an instruction. *Commonwealth v. Lesko*, 15 A.3d 345, 401 (Pa. 2011) (*citing Commonwealth v. Puksar*, 951 A.2d 267, 277–278 (Pa. 2008)).

After the close of evidence, this Court read the jury the following instruction:

> You also heard evidence throughout the course of this trial about alleged intimidation and/or threats. I want to point out to you that the only specific evidence that you had in this case was that someone shouted out after the preliminary hearing as Mr. Respes was walking down the hall, called him a name, and I believe it was a snitch.
> Now, first of all, there's no evidence that that was done on the defendant's behalf or clearly it was not done by the defendant. But this evidence is before you for, once again, a limited purpose, and that is that the evidence of the calling out of the name and any other evidence concerning possible intimidation or about any of the witnesses in this case, this evidence is before you for a limited purpose, and that is for the purpose of helping you in assessing the credibility of Mr. Cunningham and Mr. Respes.
> It must not be considered by you in any way other than the purpose for which I stated. It's one factor that you use when you determine the credibility and weight of each of the witnesses.
> You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies or that he has friends, associates, or colleagues that in any way did this on his behalf, and you cannot in any way be inclined to infer guilt from the fact that such comments were allegedly made.

N.T. 5/28/2013 at 112–113. The Petitioner claims that this instruction linked the Petitioner to alleged threats and intimidation made against witness Respes after the preliminary hearing. As the instruction clearly indicates, this Court unmistakably advised the jury that the Petitioner himself did not make the threats; nor does evidence indicate that Cunningham or Respes was threatened on the Petitioner's behalf. Rather, this Court instructed the jury that the evidence was admitted for

19

the limited purpose of assessing Cunningham's and Respes' credibility. The jury is presumed to follow such instructions. *Chmiel*, 30 A.3d at 1184. The instruction is thereby an accurate, justifiable, and proper explanation of the law, precluding the Petitioner from establishing prejudice on either claim.

## Appellate Counsel's Ineffectiveness

The Petitioner claims that appellate counsel was ineffective for failing to challenge this Court's admission of alleged hearsay testimony concerning anonymous tips. Appellate counsel will not be held ineffective unless the petitioner establishes a "reasonable probability that the outcome of his appeal would have been different had appellate counsel pursued the issue he currently proffers." *Commonwealth v. Staton*, 120 A.3d 277, 295 (Pa. 2015) (*citing Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014)). A petitioner must then meet the *Pierce* prongs of ineffective assistance. *Commonwealth v. Washington*, 880 A.2d 536, 540 (Pa. 2005). Since the Petitioner must prove the underlying merit of his claim, he must also develop all three prongs of the *Pierce* test as to the ineffectiveness of trial counsel. *Commonwealth v. Hall*, 872 A.2d 1177, 1184 (Pa. 2005) (*citing Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003)). Statements explaining a police officer's conduct during the course of an investigation are admissible. *Commonwealth v. Montalvo*, 986 A.2d 84, 95 (Pa. 2009) (*citing Chmiel*, 889 A.2d at 532 (Pa. 2005)).

As discussed *supra*, the evidence of anonymous tips elicited by trial counsel was properly admitted for the purpose of explaining the course of police conduct. Throughout trial, trial counsel sought to establish that law enforcement personnel failed to adequately investigate alternative suspects of the shooting. Unless the Petitioner is arguing that trial counsel elicited this testimony to establish that he was the shooter, the evidence was not offered for the truth of the

matter asserted. Appellate counsel therefore had no basis by which to launch a hearsay challenge against this evidence on direct appeal.

## Cumulative Effect

Finally, the Petitioner avers that he is entitled to relief based on the cumulative prejudicial effect of all the aforementioned errors. "No number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Reid*, 99 A.3d 470, 520 (Pa. 2014) (*citing Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009)). The Petitioner failed to allege any meritorious ineffective assistance claim. Therefore, there is no basis to evaluate any cumulative prejudicial effect.

## Petitioner's Rule 907 Response

In his October 11, 2016 *pro se* response to this Court's Rule 907 Notice, the Petitioner raises two additional claims of trial counsel ineffectiveness for failing to (1) investigate and present evidence to corroborate Cunningham's claim of police brutality used to coerce his police statement; and (2) interview and call known eyewitness Raheem Zachary at trial. The Petitioner further alleges that PCRA Counsel failed to follow *Finley/Turner* standards in drafting his no-merit letter.

The Petitioner alleges that trial counsel failed to introduce corroborating evidence tending to prove that Detective James Pitts threatened and choked Cunningham in order to elicit a statement. Cunningham testified that Pitts choked him in both direct and cross-examination. N.T. 5/20/2013 at 233 –234, 267–268. The Petitioner claims that two homicide cases, *Commonwealth v. Drayton* (2011) and *Commonwealth v. Speakes* (2012), were dismissed because witnesses were

choked by Detective Pitts.[3] The Petitioner argues that trial counsel was unaware of these cases, and had he brought them up, the Petitioner would have been acquitted.

The Petitioner fails to demonstrate that such evidence is relevant and admissible. Detective Pitts did not interview Cunningham, he did not record Cunningham's statement, nor did he testify at trial, precluding introduction on an impeachment basis. If such evidence were offered to show that Pitts did in fact choke Drayton and Speakes, it would be precluded as inadmissible hearsay. Moreover, the Petitioner cannot demonstrate prejudice. Trial counsel effectively and reasonably raised the issue. Not only did Cunningham testify that Detective Pitts choked him, but trial counsel elicited further evidence of Pitts' abuse while cross-examining Cunningham, Detective Gaul, and Detective Verrecchio. Trial counsel's examination permitted the jury to infer that Detective Pitts may have coerced Cunningham, but they found the Petitioner guilty regardless.

The Petitioner further alleges that trial counsel ineffectively failed to call known eyewitness Raheem Zachary, whom he alleges would testify to the Petitioner's actual innocence. The Petitioner further alleges that Philadelphia Police interviewed Zachary and attempted to record a statement, but that Zachary insisted that the Petitioner was not the assailant and refused to sign the statement. In support, the Petitioner submitted a brief "Certificate of Proposed Testimony," where the Petitioner certifies that, if called, Zachary would testify to the above averments.

The Petitioner fails to satisfy the *Pierce* requirements with regard to trial counsel's supposed failure to call a witness. *See Matias*, *supra*. Although the Petitioner provides a certification outlining the substance of Zachary's testimony, the Petitioner fails to allege and

---

[3] The Commonwealth *nolle prossed* the matter against Unique Drayton on 1/03/2011 after a Commonwealth witness failed to appear on the trial date of 12/27/2010. A jury acquitted Amin Speakes after video evidence showed that he was at a gas station miles away from the murder scene at the time of the shooting.

22

provide evidence to show that the Zachary was available and willing to testify for the defense. Moreover, the Petitioner fails to demonstrate how Zachary's testimony would have changed the result of the trial. Trial Counsel diligently and effectively challenged the adequacy of the Commonwealth's investigation and frequently raised the issue of whether it failed to examine alternative suspects. As the sole fact finder, the jury was within its right to accept the Commonwealth's theory.

Finally, the Petitioner alleges that PCRA Counsel failed to follow the *Turner/Finley* standards in drafting his no merit letter. Specifically, the Petitioner alleges that PCRA Counsel (1) failed to raise each of his requested claims; (2) misstated facts from the record; (3) used irrelevant case law to support his arguments; and (4) improperly deduced trial strategy from the record in order to dismiss claims. The Petitioner provides no argument or case law in support of his boilerplate contentions.

This Court reviewed counsel's *Finley* letter and the Petitioner's exhaustive and numerous filings in this matter, which totaled over eighty pages of averments. Upon independent review, this Court concludes that PCRA Counsel adequately addressed the Petitioner's claims, each of which were without merit. No further argument is warranted.

For the foregoing reasons, the Petitioner's petition is DENIED. PCRA counsel's request to withdraw is GRANTED. The Petitioner is hereby notified that he has the right to proceed *pro se* and has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

Barbara McDermott

Barbara A. McDermott, J.

23

*Commonwealth v. Christopher Goodwin*, **CP-51-CR-0012214-2011**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Robin Godfrey, Esq.

**Type of Service:** **DA's Courthouse Assigned Box**

Christopher Goodwin
LA 8313
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

**Type of Service:** **Certified Mail**

James F. Berardinelli, Esq.
1600 Locust Street
Philadelphia, PA 19103

**Type of Service:** **First Class Mail**

**Dated: October 24, 2016**

**Joseph R. Duffy**
**Law Clerk to the**
**Honorable Barbara A. McDermott**

# APPENDIX B

J-S02029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER GOODWIN | : | |
| | : | |
| Appellant | : | No. 3609 EDA 2016 |

Appeal from the PCRA Order October 24, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012214-2011

BEFORE: BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:               **FILED JUNE 28, 2018**

Appellant Christopher Goodwin appeals *pro se* from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition without a hearing. Appellant raises a multitude of ineffective assistance of counsel claims[2] in connection with his conviction for first-degree murder[3] and related offenses.[4] Appellant also asserts that the PCRA court erred by failing to hold an evidentiary hearing, refusing to allow him to amend his PCRA petition, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] We have reordered Appellant's claims and arguments for the purpose of review.

[3] 18 Pa.C.S. § 2502(a).

[4] 18 Pa.C.S. §§ 6106, 6108.

accepting PCRA counsel's petition to withdraw as counsel pursuant to **Turner/Finley**.[5] We affirm.

A review of the record reveals the following facts and procedural history relevant to this appeal. Shortly after midnight on June 25, 2011, Dwayne Isaacs (Decedent) was shot and killed in the Wilson Park project in Philadelphia (Wilson Park). The shooting occurred in a small circular park near 27th and Jackson Streets. Investigators obtained information that three individuals, Andre Cunningham, Aaron Respes, and Raheem Zachary, witnessed the shooting.

Philadelphia Police Detective John Verrecchio was assigned the case, and Detective Thomas Gaul assisted Detective Verrecchio. Police also received anonymous tips regarding the incident, but those tips were not documented in writing.

On July 21, 2011, Cunningham gave a written statement to Detectives Verrecchio and Gaul.[6] According to Cunningham's statement, he was in the park, and Aaron Respes and Raheem Zachary were sitting on a bench inside the park. Appellant climbed over a fence to enter the park, went to Respes

---

[5] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

[6] Cunningham was brought to the police station approximately eighteen hours before giving his written statement to Detectives Verrecchio and Gaul.

and Zachary, and asked them if they had any "Xannies."[7]  Decedent walked down the pathway of the park.  Appellant approached Decedent and shot Decedent in the head.  After Decedent fell to the ground, Appellant continued shooting as he walked away from Decedent.

Cunningham identified Appellant as the shooter by Appellant's nickname, "Gunna," by his first name, "Chris," and by his photograph. Cunningham signed his written statement to the police and Appellant's photograph.

The following day, July 22, 2011, Respes gave a written statement to Detectives Verrecchio and Gaul.[8]  According to Respes, he was walking past the park and saw Appellant shoot Decedent.  Respes identified Appellant by his nickname, and by a photograph.  Respes signed his statement and Appellant's photograph.  Respes did not indicate that there were other people in the area or that Appellant asked for "Xannies."

Zachary was also interviewed by police.  However, Zachary refused to give a written statement.[9]

---

[7] No evidence was introduced to establish that the term "Xannies" referred to a narcotic.  However, "Xannies" apparently referred to Xanax. *See* N.T., 5/22/14, at 219.

[8] Respes was brought to the police station approximate twelve hours before giving his written statement to Detectives Verrecchio and Gaul.

[9] A police activity log associated with Zachary's oral statement indicated, in part, that Zachary told detective that he was in the park at the time of the shooting but did not see the shooter.

Investigators also received information that Decedent was involved in a confrontation with Leroy Brown (Kamac)[10] shortly before the shooting. The information suggested that the confrontation involved a prior home invasion during which Rahsul Issacs, Decedent's nephew, shot Lekkir Brown, Kamac's son.

On August 2, 2011, Appellant was charged with the murder of Decedent and was taken into custody that same day. The trial court initially scheduled a preliminary hearing for August 24, 2011, but continued the hearing when Cunningham and Respes failed to appear.

On October 25, 2011, Detectives Verrecchio and Gaul brought Respes to court for the preliminary hearing. At the hearing, Respes testified that Appellant shot Decedent.[11]

Immediately after the preliminary hearing, Respes met with Tobi Downing, a relocation coordinator in the District Attorney's Office. Respes signed a form declining relocation assistance.

Two days after his first meeting with Tobi Downing, Aaron Respes called the relocation office. The next day, on October 28, 2011, Respes again met with Downing, this time with his mother. At some point after that meeting, Respes and his mother moved out of Wilson Park.

---

[10] Appellant uses the spelling "Camac" throughout his brief. We use the spelling "Kamac" based on the spelling used in the trial transcript.

[11] Cunningham did not appear at the October 25, 2011 preliminary hearing.

On June 3, 2012, Cunningham contacted a defense investigator and recanted his statement to the police. Cunningham informed the defense investigator that a detective, allegedly Detective John Pitts, choked him before he gave his statement to Detectives Verrecchio and Gaul.

In May 2013, immediately before trial, Cunningham met the assigned prosecutor at her office. Detective Verrecchio was also present during portions of the meeting. At some point during this meeting, the Commonwealth printed photographs from Facebook purporting to show Appellant and Lekkir Brown together, as well as Respes.

Appellant proceeded to a jury trial, and the Commonwealth began its case on May 20, 2013. The Commonwealth asserted that Appellant shot and killed Decedent in retaliation for the shooting of Kamac's son by Decedent's nephew during a home invasion. In support, the Commonwealth called Decedent's sister, Lisa Hall, who testified that Decedent told her about a confrontation with Kamac. According to Hall, Decedent told her that he was worried about going out in the neighborhood because of his confrontation with Kamac.

During the Commonwealth's direct examination of Cunningham, Cunningham recanted his statement to police and testified that he did not see the shooting. According to Cunningham, he was intoxicated at the time of the interview. The prosecutor also questioned Cunningham about their meeting shortly before trial and the process by which the prosecutor obtained photographs from Facebook. The prosecutor also questioned Cunningham

about statements he purportedly made during that meeting, including statements involving threats against Respes. The Commonwealth admitted the Facebook photographs of Appellant and Lekkir Brown and of Respes into evidence.

On cross-examination, trial counsel elicited Cunningham's testimony that he was on Taney Terrace where he saw Appellant with two females. Cunningham also testified that a black detective with a lump on his neck choked and threatened him before he gave his statement to Detectives Verrecchio and Gaul. Cunningham did not know the name of the detective who threatened him.

During the Commonwealth's direct examination of Respes, Respes also recanted his statement to the police.[12] The Commonwealth admitted Cunningham's and Respes' prior written and signed statements to police as substantive evidence. Respes denied receiving any threats or seeking relocation for himself. Respes explained that he agreed to relocation to assist his mother.

The defense, in turn, emphasized that Cunningham's and Respes' statements to police should not be credited. The defense challenged the adequacy of the investigation into Decedent's murder and asserted that there

---

[12] Cunningham completely recanted his statement to police and testified that he did not see the shooting. Respes also denied identifying Appellant during his statement to the police. Respes testified at trial that he was at the scene of the shooting, heard a gunshot, and saw Decedent and "someone who looked like [Appellant]" holding a gun. N.T., 5/21/13, at 86-91.

was a rush to judgment to implicate Appellant. The defense emphasized that
there were more likely suspects in the shooting, including Kamac, with whom
Decedent was in a confrontation over the prior home invasion. Additionally,
Anara Brown—Kamac's niece and the cousin of Lekkir Brown, who was shot in
the home invasion—testified for the defense. Anara Brown stated she was
with Appellant on the 2600 block of Jackson Street at the time of the shooting.
Appellant elected not to testify at trial.

On May 28, 2013, the jury found Appellant guilty of first-degree murder
and related offenses. That same day, the trial court sentenced Appellant to
life imprisonment.

This Court affirmed his judgment of sentence on July 14, 2014.[13]
***Commonwealth v. Goodwin***, 2009 EDA 2013 (Pa. Super. July 14, 2014)
(unpublished memorandum). On January 21, 2015, the Pennsylvania
Supreme Court denied Appellant's petition for allowance of appeal.
***Commonwealth v. Goodwin***, 108 A.3d 34 (Pa. 2015).

On June 15, 2015, Appellant filed the timely *pro se* PCRA petition that
gives rise to this appeal. The PCRA court appointed counsel to represent
Appellant, and PCRA counsel entered his appearance on April 11, 2016. On
July 8, 2016, Appellant filed a *pro se* motion for appointment of new PCRA
counsel. On August 10, 2016, PCRA counsel filed a ***Turner/Finley*** "no-merit"

---

[13] In his direct appeal, Appellant challenged the sufficiency and weight of the
evidence. ***See Goodwin***, 2009 EDA 2013, at *2.

letter. On September 6, 2016, Appellant filed a *pro se* "Response and Objection to Counsel's '**Finley** No-Merit Letter.'" On September 22, 2016, the PCRA court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. That same day, the court denied Appellant's July 8, 2016 request for new counsel.

Appellant filed a *pro se* response to the PCRA court's Rule 907 notice. On October 24, 2016, the PCRA court denied Appellant PCRA relief and granted PCRA counsel's motion to withdraw.

Appellant filed a timely notice of appeal *pro se*. The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant, in his *pro se* brief, sets forth thirteen issues with related arguments. For the purposes of this appeal, we reproduce the headings of Appellant's arguments in the following order:[14]

1. Was trial counsel ineffective for failing to adequately prepare a pretrial investigation[?]

2. Was trial counsel ineffective for failing to object to the prosecutor eliciting hearsay evidence of [Decedent's] then existing state of mind[?]

3. Was trial counsel ineffective for failing to object to the prosecutor eliciting hearsay evidence of threats, arguing with

_____

[14] Appellant presents fifteen questions involved in this appeal, but combines several questions in the headings in his brief. Appellant's Brief at 7-8. We elect to address Appellant's issues as stated in the headings for each issue in his brief, but have reordered the issues.

- 8 -

> [a] witness, improper bolstering, the trial court giving a faulty instruction and allowing threat evidence[?]

4. Was trial counsel ineffective for opening the door to numerous [instances of] prejudicial testimony[?]

5. Was direct appeal counsel ineffective for failing to challenge hearsay evidence[?[15]].

6. Was trial counsel ineffective for failing to object and request a mistrial due to [a] pretrial discovery violation[?]

7. Was trial counsel ineffective for failing to elicit testimony that [K]amac was a possible shooter, by impeaching the witness with exculpatory evidence within his possession[?]

8. Was trial counsel ineffective for failing to object to the prosecutor's numerous fraud[s] upon the court[?]

9. Was trial counsel ineffective for failing to object to the numerous [instances of] prosecutorial misconduct in closing argument[?]

10. Was trial counsel ineffective for failing to object to the prosecutor improperly focusing the jury['s] attention on the element of fear in order to inflame the passions of the jury[?]

11. W[ere] Appellant's due process rights violated due to the cumulative effect of the errors complained of herein[?]

12. Did the PCRA court err[] by denying Appellant's PCRA petition without a[n] evidentiary hearing, failing to grant leave to amend, and accepting PCRA counsel **Finley** letter[?]

13. Was PCRA counsel ineffective due to the following performance summarized below[?]

---

[15] The heading in page 27 of Appellant's brief stated: "Was trial counsel ineffective for opening the door to numerous prejudicial testimony and was direct appeal counsel ineffective for failing to challenge hearsay evidence." Appellant's Brief at 27 (some capitalization omitted). We have separated these two arguments for the purposes of this disposition.

***See*** Appellant's Brief at 11-12, 19, 21, 27, 31, 35, 38, 40, 44, 48, 51, 52

(some capitalization omitted).

Appellant, in his first ten issues, contends that the PCRA court erred in

dismissing his ineffective assistance of counsel claims. Our review is governed

by the following principles:

> We must examine whether the record supports the PCRA court's
> determination, and whether the PCRA court's determination is free
> of legal error. The PCRA court's findings will not be disturbed
> unless there is no support for the findings in the certified record.
>
> * * *
>
> It is well-established that counsel is presumed to have provided
> effective representation unless the PCRA petitioner pleads and
> proves all of the following: (1) the underlying legal claim is of
> arguable merit; (2) counsel's action or inaction lacked any
> objectively reasonable basis designed to effectuate his client's
> interest; and (3) prejudice, to the effect that there was a
> reasonable probability of a different outcome if not for counsel's
> error.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations

omitted). We may affirm the PCRA court's ruling on any basis apparent in the

record. ***Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009).

### 1. Trial counsel's failure to prepare a pretrial investigation

In his first issue, Appellant asserts that the PCRA court erred in

dismissing his claims that trial counsel failed to prepare for trial. In support,

he argues that trial counsel failed to investigate or call two witness—Tiara

Young and Raheem Zachary. Appellant's Brief at 13-15. Appellant also

suggests that trial counsel appeared to be unaware of information in the

anonymous tips given to police and Respes' relocation paperwork. Further,

Appellant argues that trial counsel should have discovered and presented evidence that Detective Pitts had a history of threatening and assaulting suspects. *Id.* at 15-17. We address these arguments separately.

## (A) Tiara Young

The background to Appellant's claim that trial counsel should have investigated Tiara Young is as follows. Yvette Morris gave a statement to police that Young called her after the shooting and said that there was a rumor that Kamac shot the victim. Appellant's Brief at 13. From this, Appellant suggests that a proper investigation of Young would have revealed the identity of the individual who stated that Kamac was the actual shooter.

When raising a claim of ineffectiveness for failure to call a potential witness, a petitioner must establish that

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa. Super. 2013) (*en banc*) (citation omitted).

Instantly, Appellant failed to establish that either Tiara Young or the individual who allegedly told Young about the crime existed or were available and willing to testify for the defense. Thus, Appellant's claim that trial counsel was ineffective for failing to investigate or call Young fails. *See Matias*, 63 A.3d at 810-11.

## (B)  Raheem Zachary

As to Zachary, Appellant assserts Zachary would have testified that he saw the shooter, who did not match Appellant's description, and could have provided further testimony to support Appellant's alibi defense by testifying that he saw Appellant with two females on the 2600 block of Jackson Street.[16] Appellant specifically argues the PCRA court erred in concluding that Appellant failed to establish prejudice.  Appellant's Brief at 14-15.

Our review reveals that Zachary's proposed testimony that he saw an individual running from the scene is too speculative to warrant relief, as Zachary testified he was one block away from the shooting and did not see the shooting.  Thus, Zachary's mere assertion that the individual he saw was the shooter, does not establish merit or prejudice based on trial counsel's alleged failure to discover this information.  **See Matias**, 63 A.3d at 810-11.

Moreover, Zachary's proposed testimony that he saw Appellant with two women on the 2600 block of Jackson Street was cumulative of testimony already presented at trial.  Anara Brown testified at trial that she was with

---

[16] We note that Appellant, in his response to the PCRA court's Rule 907 notice provided a certification that Raheem Zachary would testify that he had a clear view of the shooter and that Appellant was not the shooter.  Appellant's certification also indicated that Zachary refused to sign a statement the detective's prepared implicating Appellant during the investigation.  Appellant has also attached to his brief an affidavit in which Zachary states he saw Appellant and two females outside 2620 Jackson Street, and then heard shots. Zachary saw a person fleeing the scene of the shooting who did not match Appellant's description.  We will consider Zachary's affidavit for the purpose of this appeal.

Appellant in front of 2620 Jackson Street at the time of the shooting and that Appellant did not shoot Decedent.[17]    N.T., 5/22/13, at 248-49, 252-53. Accordingly, we agree with the PCRA court that Appellant did not establish prejudice from trial counsel's alleged failure to interview or call Zachary. **See id.**

### (C)    Anonymous tips and Aaron Respes' relocation paperwork

Appellant also argues the PCRA court improperly rejected his claim that trial counsel's failed to investigate the anonymous tips received by police and Respes' relocation paperwork.  In sum, Appellant claims that if trial counsel had been prepared, counsel could have utilized information to better effect or refrained from referring to other information.  These arguments, however, are duplicative of more specific claims discussed below.  At this juncture, we note that the record belies Appellant's arguments that trial counsel failed to discover the information that (1) the anonymous tips received by the police implicated Appellant, as well as other individuals, in the shooting, and (2) Respes declined relocation services.

### (D)    Evidence regarding Detective Pitts

Appellant further argues the PCRA court should have granted relief on his claim that trial counsel was ineffective for failing to investigate the detective who allegedly brutalized Cunningham before Cunningham gave his

---

[17] Additionally, after recanting his statement to police, Cunningham testified that he observed Appellant with the two women at the time of the murder. **See** N.T. Trial, 5/20/13, at 247.

written statement. Appellant's Brief at 18. Appellant specifically asserts that

the PCRA court erred in concluding that evidence of Detective Pitts' behavior

in other cases was not admissible in the instant case. *Id.* at 18-19. Appellant

argues that the evidence of Detective Pitts' record in other cases would be

admissible as rebuttal evidence of Detective Gaul's testimony regarding the

character of Detective Pitts. *Id.*

The PCRA court, when dismissing this claim, opined:

> [Appellant] alleges that trial counsel failed to introduce
> corroborating evidence tending to prove that Detective James
> Pitts threatened and choked Cunningham in order to elicit a
> statement. Cunningham testified that Pitts choked him in both
> direct and cross-examination. [Appellant] claims that two
> homicide cases . . . were dismissed because witnesses were
> choked by Detective Pitts. [Appellant] argues that trial counsel
> was unaware of these cases, and had he brought them up,
> [Appellant] would have been acquitted.
>
> [Appellant] fails to demonstrate that such evidence is relevant and
> admissible. Detective Pitts did not interview Cunningham, he did
> not record Cunningham's statement, nor did he testify at trial,
> precluding introduction on an impeachment basis. If such
> evidence were offered to show that Pitts did in fact choke [other
> defendants], it would be precluded as inadmissible hearsay.
> Moreover, the Petitioner cannot demonstrate prejudice. Trial
> counsel effectively and reasonably raised the issue. Not only did
> Cunningham testify that Detective Pitts choked him, but trial
> counsel elicited further evidence of Pitts' abuse while cross-
> examining Cunningham, Detective Gaul, and Detective
> Verrecchio. Trial counsel's examination permitted the jury to infer
> that Detective Pitts may have coerced Cunningham, but they
> found the Petitioner guilty regardless.

PCRA Ct. Op., 10/24/16, at 22 (footnotes and record citations omitted).

Following our review, we agree with the PCRA court's cogent analysis.

Of note, the PCRA judge in this case also presided over trial and was able to

make factual findings and credibility determinations based on the existing record that Cunningham did not encounter Detective Pitts. ***See Franklin***, 990 A.2d at 797. Thus, we discern no basis upon which to disturb its ruling.[18]

## 2. Trial counsel's failure to object to the prosecutor eliciting hearsay evidence of Decedent's then existing state of mind

Appellant's next issue focuses on trial counsel's failure to object to testimony regarding statements Decedent made before he was killed. According to Appellant, trial counsel's omission permitted the Commonwealth to introduce hearsay evidence that resulted in prejudice.

The background to this claim is as follows. Lisa Hall testified for the Commonwealth that she spoke with Decedent on the telephone approximately two hours before Decedent was shot. Hall and Decedent discussed the prior home invasion during which Decedent's nephew, Rahsul Isaacs, was rumored to have shot Lekkir Brown. ***See*** N.T., 5/21/13, at 263. Hall further testified that Decedent told her he "was kind of leery about going out to the project because of what [Kamac] had said to him and the young guys that was out there." ***Id.***

---

[18] Appellant has also filed an application to vacate and remand based on after-discovered evidence related to this claim. Specifically, he references additional evidence regarding Detective Pitts, namely, that a court has reviewed Detective Pitts' internal affairs file and that another PCRA petitioner obtained a new trial in a case in which the detective was involved. However, given the PCRA court's factual findings and determinations of credibility based on the existing record, this additional evidence does not warrant relief.

Appellant, in his *pro se* PCRA petition, alleged that trial counsel should have objected to Hall's testimony that Decedent was afraid as hearsay. PCRA Pet., 6/15/15, at 36. PCRA counsel, when seeking leave to withdraw from representation, asserted that Appellant's claim was meritless because Hall's testimony fell within the state of mind exception to the general rule against hearsay. *Finley* Ltr., 6/11/16, at 5 (unpaginated).

The PCRA court dismissed Appellant's claim on an alternative basis. The court reasoned that Decedent's statements were admissible because the "evidence was not offered for the truth of the matter, but rather to establish [Appellant's] motive[.]" PCRA Ct. Op., at 9-10. Thus, the court concluded that trial counsel had no basis to object.[19]

Appellant presently argues that the PCRA court's rationale is unsustainable. In support, Appellant relies on **Commonwealth v. Moore**, 937 A.2d 1062 (Pa. 2007). Appellant's Brief at 21.

It is well settled that "[h]earsay is an out-of-court statement offered to prove the truth of the matter asserted" and is generally inadmissible. **See Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999) (citation omitted).

> When an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule. Thus, statements are

---

[19] The PCRA court specifically rejected PCRA counsel's assertion that the testimony regarding Decedent's statements were admissible under the "state of mind" exception to the rule against hearsay. **See** PCRA Ct. Op. at 10 n. 2.

confronted Decedent about the prior shooting of Lekkir Brown was undisputed and was essential to the defense's theory that Kamac had a greater motive to kill Decedent that Appellant. Under these circumstances, we cannot conclude that the error in admitting Decedent's statement resulted in a reasonable probability that the outcome at trial would have been different. Thus, this claim of ineffective assistance of counsel did not warrant relief. *See Franklin*, 990 A.2d at 797; *Wiley*, 966 A.2d at 1157.

### 3. Trial counsel's failure to object to the prosecutor eliciting hearsay evidence of threats, arguing with a witness, improper bolstering, the trial court giving a faulty instruction and allowing threat evidence

In his next issue, Appellant claims that the PCRA court erred in rejecting his ineffectiveness claims as to: (A) the prosecutor's references to threats during the examination of Cunningham and Respes, the two witnesses who provided statements to the police, (B) the trial court's cautionary instructions, (C) hearsay evidence regarding threats against Respes that were introduced through the relocation coordinator Tobi Downing, and (D) the prosecutor's "arguing" with Cunningham.[20] *See* Appellant's Brief 19-27.

(A)     Threats

---

[20] We have reordered the presentation of Appellant's arguments in support of this issue.

As to the prosecutor's references to threats against Cunningham and Respes, Appellant cites to the following portions of the Commonwealth's direct examination of Cunningham:

[Prosecutor]     Okay. Didn't you tell me in my office on Friday that [Appellant's] brother, Gunna Ish, that goes by that nickname, Gunna Ish, threatened Aaron [Respes]?

[Cunningham]     No.

Q     You didn't tell me in my office that [Appellant's] brother told Aaron, if he does time, then Aaron's dead?

A     No.

N.T., 5/20/13, at 227.

Appellant also refers to the following portions of the Commonwealth's direct examination of Respes regarding the events after Respes testified at the preliminary hearing:

[Prosecutor]     Okay. How about when you were leaving the courthouse with the detectives.

Did you see people from Wilson [Park] outside the room?

[Respes]     No.

Q     How about outside the courthouse?

A     No.

Q     Nothing?

A     No.  You can't see out of those curtains.

Q     I'm talking about when you were walking out with detectives over to my office.

Do you remember that?

A     No.

Q    You don't remember?

A    Yeah, I remember walking over, but I didn't see anybody from Wilson.

Q    You don't remember anyone yelling "snitch" when you were walking with the detectives?

A    No.

Q    Do you remember why you went to my office after?

A    No.

Q    Do you remember that you got interviewed for possible relocation?

* * *

[Prosecutor]    Do you know the [Appellant's] brother, Ishmael Goodwin?

[Respes]    Yes.

Q    Does he have a nickname?

A    Ish.

Q    Okay. Do they call him Gunna Ish or just Ish?

A    Ish. I call him Ish.

Q    Okay. He never threatened you?

A    No.

Q    Never said that if his brother does time, you're going to get killed?

A    No.

Q    Do you see Ish in the courtroom?

A    Yes, he's right there.

Q    What color shirt is he wearing?

A    Blue.

Q    The second row of people in that light blue shirt right there?

- 20 -

A     Yes.

Q     That's [Appellant's] brother?

A     Yes.

Q     Okay.  Do you see other people in the neighborhood from Wilson?

A     Yes.

N.T., 5/21/13, at 138, 146-47.

Appellant asserts that the PCRA court erred in concluding that the prosecutor's references to threats were introduced to explain Cunningham's and Respes' recantation at trial.  Appellant insists that this evidence was introduced to allege that he and his brother intimidated witnesses and to establish consciousness of guilt.  He further contends that the testimony regarding threats was unreliable because both Cunningham and Respes testified at trial that they were not threatened.  Appellant's Brief at 22-23.

We have reviewed the record and discern no merit to Appellant's claim.  Although a variety of threat evidence was presented at trial and referred to by the Commonwealth, the evidence was admitted to explain Cunningham's and Respes' recantations of their statements to the police.  **See** **Commonwealth v. Ragan**, 645 A.2d 811, 824 (Pa. 1994) (indicating that where the purpose of introducing threat evidence is not to establish guilt, but to explain a prior inconsistent statement, it is a permissible use).  Indeed, the trial court issued a cautionary instruction to this effect and clearly stated that the only purpose of the evidence of threats against Cunningham and Respes

- 21 -

was for assessing the credibility of their trial testimony.[21]  N.T. Trial, 5/28/13,

at 113; **see Commonwealth v. Mason**, 130 A.3d 601, 673 (Pa. 2015)

(reiterating that "[j]uries are presumed to follow such instructions").  Thus,

we discern no basis to disturb the PCRA court's ruling that the threats evidence

was admissible and that trial counsel had no basis to object.

### (B)  Cautionary instructions

Appellant also complains that the trial court's cautionary instructions

implicated him in the threats against and that trial counsel should have

objected.  As noted above, the Commonwealth referred to threats during its

direct examination of Cunningham and Respes.  However, both Cunningham

and Respes denied the allegations that threats were made.  Additionally,

Respes specifically denied hearing any threats after his preliminary hearing or

seeing any individuals from the Wilson Park neighborhood at the preliminary

hearing.

The Commonwealth, however, subsequently called Detective Gaul.

Detective Gaul testified, in part, that Aaron Respes appeared fearful when

entering and leaving the courtroom.  Detective Gaul further testified that after

Respes testified at the preliminary hearing, the detective and Respes were

---

[21] The entire cautionary instruction issued by the trial court is reproduced
below in connection with Appellant's separate challenge to the instruction
itself.  Moreover, we note that the court did not issue a consciousness of guilt
instruction.

walking through the hallway of the courthouse to go to the District Attorney's

office. N.T., 5/22/13, at 48. Detective Gaul continued:

> Basically, after we passed through, like, you know, it was a large
> crowd. But as you're walking through the crowd, you can't see
> who's yelling stuff, but they're yelling at [Respes], you know,
> snitch, things of that nature. And we're just trying to get him
> through the crowd and get him over the District Attorney's Office,
> but he was visibly shaken by what was going on.

*Id.*

In its charge to the jury, the trial court issued the following cautionary

instruction:

> You also heard evidence throughout the course of this trial about
> alleged intimidation and/or threats. I want to point out to you
> that the only specific evidence that you had in this case was that
> someone shouted out after the preliminary hearing a Mr. Respes
> was walking down the hall, called him a name, and I believe it was
> a snitch.
>
> **Now, first of all, there's no evidence that that was done on
> the defendant's behalf or clearly it was not done by the
> defendant.** But this evidence is before you for, once again, a
> limited purpose, and that is that the evidence of the calling out of
> the name and any other evidence concerning possible intimidation
> or about any of the witnesses in this case, this evidence is before
> you for a limited purpose, and that is for the purpose of helping
> you in assessing the credibility of Mr. Cunningham and Mr.
> Respes. It must not be considered by you in any way other than
> the purpose for which I stated. It's one factor that you use when
> you determine the credibility and weight of each of the witnesses.

N.T., 5/28/13 at 112-13 (emphasis added).

Appellant complains that by referencing the evidence that someone

yelled "snitch," the trial court improperly suggested that Detective Gaul's

version of the events at the preliminary hearing were credible. Appellant's

Brief at 25. Appellant further suggests that the instruction insinuated that Appellant was connected to the threats. *Id.* He asserts that the trial court should have stated that there was no evidence linking Appellant to the threats and then stopped. *Id.* Thus, Appellant asserts that trial counsel was ineffective for failing to object to the instruction, and that the PCRA court erred in dismissing this claim as meritless.

Following our review, we agree with the PCRA court that this claim relies on a strained reading of the cautionary instruction, which was proper in all respects. The trial court accurately indicated that there was evidence that an unknown individual called Respes a snitch. The trial court further made clear that Appellant was not linked to the name calling or any threats. Thus, the PCRA court properly concluded that Appellant's assertion that the instruction was improper lacked arguable merit.

## (C) Testimony of Tobi Downing

Appellant next claims that trial counsel was ineffective for failing to object to the testimony of the relocation coordinator Tobi Downing, who discussed her two meetings with Respes after Respes testified at the preliminary hearing. Appellant argues that the Commonwealth elicited hearsay statement from Respes and improperly bolstered Respes' prior statement to the police. Appellant contends the admission of those statements violated *Crawford v. Washington*, 541 U.S. 36 (2004). Appellant further contends that Ms. Downing's testimony improperly bolstered

- 24 -

the "fear factor" emphasized by the Commonwealth throughout trial. Appellant's Brief at 24.

However, the record indicates that the Commonwealth did not elicit Tobi Downing's testimony regarding statements made by Aaron Respes. Rather, Downing testified to the facts regarding their meetings after Respes testified at the preliminary hearing. Moreover, Respes was available for cross-examination by Appellant. In any event, Appellant appears to suggest that Downing's testimony was unreliable because Respes, at trial, testified he denied relocation services at the first meeting with Downing and only appeared to accept relocation services at the second meeting to assist his mother. Such evidence was admissible for the purposes of impeachment to explain Respes' recantation. Therefore, Appellant fails to establish any arguable merit to his claim that trial counsel should have objected to Downing's testimony.

### (D) Arguing with a Witness

Appellant next contends that trial counsel was ineffective for failing to object to the prosecutor's examination of Cunningham regarding the meeting between the prosecutor and Cunningham shortly before trial.

By way of background, Detective Verrecchio described the meeting as follows. Cunningham was with the prosecutor in the prosecutor's office and was "cooperative and forthcoming." N.T., 5/22/13, at 154. According to the detective, at some point during the meeting, Cunningham accessed Facebook on the prosecutor's computer and identified individuals from pictures on

Facebook. *Id.* at 155. Copies of those pictures were printed at that time. At

trial, they were marked as exhibits, and published to the jury.

Appellant's claim arises out of the following portion of the

Commonwealth's direct examination of Cunningham:

[Prosecutor] And when you were in my office, do you remember talking with me in front of Detective Verrecchio?

[Cunningham] Yeah. He was asking me why I didn't come to court and stuff.

Q And we also went over what happened the night of the murder; right?

A Yes.

Q And you told me everything that you saw, and what you told me was consistent with this statement; right?

A No. I told you that I was on Taney Terrace.

Q Are you telling me that in my office with Detective Verrecchio you didn't tell me how this defendant committed this murder?

A I told you I was on Taney Terrace.

Q You're not answering my question.

A You never said nothing about that. You said, What happened? And I told you I was on Taney Terrace. And then you started going into the statement and stuff, and that was about it.

Q Actually, I never showed you your statement when you were there. You didn't show me the statement. You started talking about it.

Q I asked you what happened, and you told me that [Appellant], Gunna, committed the shooting and you saw it; right?

A I did not say that.

Q You didn't say that?

A No.

Q     Well, you sat down, in fact, at my computer and started printing out Facebook pictures of everyone, didn't you?

A     No. You went on my Facebook.

        THE COURT:        She went on your Facebook?

        [Cunningham]:    Yes. She asked me to log in. And I logged in for her, and she went on my Facebook.

        THE COURT:        Was there a detective there?

        THE WITNESS:    He was in and out. He was in and out.

        THE COURT:        Okay. Go ahead.

                                    ***

Q     All right. Well, let me ask you this: You have a Facebook page?

A     Yes.

Q     Is there a password for your Facebook page?

A     Yes.

Q     And on last Thursday, after you repeated the whole murder that you witnessed, you said, I'll even show you some pictures of everyone on Facebook, and you showed them to me, didn't you?

A     No. I gave you my password. You went through it, and I was sitting in the chair. And that's when you offered to buy me soup.

Q     To buy you soup?

A     Yes.

Q     Are you saying that you only gave me Facebook pictures because I bought you soup?

A     No.

Q     You didn't eat all night overnight, did you?

A     I didn't eat since I was locked up.

- 27 -

Q        You told that your stomach hurt and you didn't want to eat; right?

A        I told you I was cool. You kept offering to buy me soup. You said you was going to go get it.

Q        All right. Am I supposed to let you starve in my office?

A        No.

N.T., 5/20/13, at 206-08.

According to Appellant,

The prosecutor sought to bolster the witness['] out-of-court police statement by arguing with Mr. Cunningham about things the witness allegedly said to her out of court. The prosecutor claimed that Mr. Cunningham told her exactly what [i]s in his police statement when they were at her office. The witness claimed that he told her exactly what [i]s in his affidavit taken by the defense investigator. The prosecutor continued to argue with the witness and insinuated the witness is lying. The prosecutor presented no evidence, not even in the form of a written statement or recording of that interv[ie]w. The prosecutor then argued with the witness about [F]acebook pictures. The witness claimed that the prosecutor went through his [F]acebook page and the prosecutor claim[ed] that the witness gave her the pictures. Through the course of them arguing about who printed the pictures, the prosecutor is calling the witness a liar and claiming that he identified peo[pl]e to her personally. Also, the [t]rial [c]ourt had to stop the prosecutor from bullying the witness.

Trial counsel['s] failure to object was not the result of any strategy. [T]rial counsel allowed the prosecutor to inject facts outside the record to allege [A]ppellant's guilt. Moreover[,] the prosecutor undermined Mr. Cunningham's credibility. The prosecutor offered no evidence of proof and this misconduct was seen by the jury as the prosecutor['s] own personal[] opinion of the witness.

Appellant's Brief at 23-24.

Even if trial counsel could have objected to the manner of the prosecutor's questioning of Cunningham, the exchange did not affect a fair consideration of Respes' prior statements identifying Appellant as the shooter. Therefore, under the totality of the circumstances of this case, Appellant has failed to demonstrate that there was a reasonable possibility that the jury would have found Appellant not guilty had trial counsel objected to this exchange. **See Franklin**, 990 A.2d at 797; **Wiley**, 966 A.2d at 1157.

## 4. Trial counsel's ineffectiveness for opening the door to numerous instances of prejudicial testimony

Appellant, in his next issue, asserts that the PCRA court erred in dismissing his claims that trial counsel "opened the door" to irrelevant and prejudicial testimony. Appellant specifically argues that trial counsel was ineffective for eliciting (A) references to anonymous tips identifying Appellant as the killer; (B) references to Raheem Zachary's oral statement to police; (C) statements referring to Appellant's prior possession of a firearm; and (D) Appellant's statement to Detective Verrecchio that he used "Xannies." Appellant's Brief at 27-31, 32-35.

### (A)  Anonymous Tips

As to Appellant's argument as to anonymous tips received by police, the record reveals the following. During cross-examination of Detective Gaul, trial counsel inquired: "What did you do to find out the who, what, when, and why[]" of the shooting. N.T., 5/22/13, at 50. Trial counsel then asked where the detective obtained information that Appellant was an associate of Lekkir

- 29 -

Brown and the alleged motive for the shooting of Decedent. *Id.* at 52. The

detective responded that "it was through, like, anonymous tips and

investigation, you know, as far as motive and what was done throughout the

investigation and what the investigation led to." *Id.*

Additionally, trial counsel posed the following question to Detective

Gaul: "You told the ladies and gentlemen of the jury that immediately there

were anonymous tips coming into the police department about who did it and

what happened; right?" *Id.* at 68. The detective responded:

> Just anonymous tips coming into the Homicide Unit. Our general
> number is (215) 686-3334 or 3335, also 3336. I'm sorry. And
> people would call and say, Look, I know who did that shooting out
> there. They wouldn't say how they know who did it, but they
> would supply a name or nickname. And all the consistent tips
> were Gunna. That's what we had at first.

N.T., 5/22/13, at 69.

The record also reveals that the trial court later cautioned the jury on

the use of the reference to the anonymous tips during the presentation of the

Commonwealth's evidence:

> Members of the jury . . . I'm telling you, this morning you heard
> a lot of testimony about information from anonymous sources and
> what things normally happen.
>
> I ruled about in response to rumors and alleged retaliation and
> intimidation of witnesses. I'm going to give you specific charges
> or instruction in reference to that before you begin your
> deliberations, but I just want to remind you that this is not really
> being offered for the truth of the matter in certain instances, but
> it's being offered to challenge the credibility of certain witnesses.
>
> And I just want to let you know that you will get more specific
> instructions on that later because, generally speaking, what other

- 30 -

people said isn't before you for the truth of the matter. That's why we have the witnesses come to court and testify. But right now, for instance, with the detectives, part of what's going on is there's a question about what they did or why they did something and not other things. So some of that comes in for that purpose only and not for the truth of the matters.

So about the rumors, we have trials. We don't convict people on rumors. That's why we have trials and we have live witnesses. By live witnesses, I mean people that come in and testify in front of you.

N.T., 5/22/13, at 173-74. As noted above, the trial court repeated a similar instruction in its final charge to the jury.[22] **See** N.T., 5/28/13, at 111-12.

Appellant presently asserts that the references to the anonymous tips identifying him as the shooter constituted hearsay evidence and violated his confrontation rights. **Id.**

As noted above, "an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." **Puksar**, 740 A.2d at 225 (citation omitted). Moreover, even if inadmissible hearsay is admitted at trial, a cautionary instruction can dispel the prejudice as it is presumed that the jury followed the trial court's instructions. **Commonwealth v. Bedford**, 50 A.3d 707, 713 (Pa. Super. 2012) (en banc).

Instantly, the information contained in the anonymous tips were not admitted for the truth of the matter contained in the tips. **See Puksar**, 740

---

[22] The cautionary instruction in the trial court's final charge is reproduced above in conjunction with Issue 3(B).

- 31 -

A.2d at 225. Additionally, the trial court's careful instructions belie Appellant's assertions that he suffered prejudice as a result from the remarks that the tips identified him as the shooter. **See Bedford**, 50 A.3d at 713. Therefore, no relief is due based on this claim.

### (B) Raheem Zachary's statement

Appellant next argues that the trial counsel was ineffective for opening the door to references to Raheem Zachary's oral statement to the police. Appellant's Brief at 32. Appellant's argument arises out of trial counsel's cross-examination of Detectives Gaul and Verrecchio regarding their efforts to corroborate Cunningham's statement to police. For example, during the cross-examination of Detective Gaul, trial counsel engaged in the following exchange:

[Trial counsel]   In Mr. Cunningham's statement, he said he went to a lady's house by the name of Theresa; remember that?

[Detective Gaul] Yes, sir.

Q   Anybody try to find Theresa?

A   I believe that --

Q   Try and corroborate that that's where he was and that's what he did?

A   That may have been attempted. I know we did -- the main person that I know that we contacted to try to corroborate was Raheem Zachary.

Now, our contact with him was documented within an activity sheet that I believe was dated -- I believe it was filled out on July 30, and he was brought into the Homicide Unit on July 27. He refused to go on paper, but he also supplied information. I mean, if you're asking for documentation, I believe that activity sheet's within the file.

Q    I've seen that.

A    Okay.

Q    But I'm talking about Mr. Cunningham's statement because Mr. Zachary didn't give you a statement; right?

A    Well, Mr. Zachary is mentioned in Mr. Cunningham's statement, I believe, as far as being out there.

Q    I understand.

A    There were attempts made. As far as, like, Theresa that was mentioned, I might not have been the detective that went out and spoke with Theresa or maybe tried to locate Theresa, but it might have been done. Again, as far as my knowledge, you know, it could have been done; it couldn't have been done. I wouldn't be able to tell you.

N.T., 5/22/13, at 72-73.

Moreover, during trial counsel's cross-examination of Detective

Verrecchio, the following exchange occurred:

[Trial counsel]    Well, to corroborate what Mr. Cunningham said. He said that at least when he was giving his narrative, according to this interview about what happened, he said he was in the speakeasy. He was in the speakeasy with my client. He didn't know my client had left the speakeasy, and identified him as a shooter, at least in this interview.

[Detective Verrecchio]    Well, there's a lot of other corroboration in the interview. We don't go out and corroborate every little detail that somebody would tell us. What we do is we corroborate what they're saying, and he gave a lot of corroborative information during the course of the interview that definitely had the ring of truth.

Q    Definitely had the ring of truth?

A    Yes, sir.

Q    Like Aaron Respes was sitting on a bench at the circle?

A    Yes, with Zachary, Raheem Zachary.

- 33 -

Q      Yeah.

A      He was sitting on the bench with him.

Q      So he would have been -- both Aaron and Zachary would have been in the circle at the time that [Decedent] was shot?

A      That's correct.

Q      And that had the ring of truth to you?

A      **Yes, it did.  Raheem Zachary told us he was in the circle with him.**

Q      Did you write that down anywhere?

A      I believe it's in an activity sheet.

Q      Did you do a formal interview with Mr. Zachary when he told you that?

A      No.  He refused to provide a written interview.

*Id.* at 180-81 (emphasis added).

Appellant disputes the PCRA court's conclusion that Appellant could not establish prejudice because the contents of Zachary's statement were not revealed at trial. Appellant's Brief at 32. Appellant asserts that trial counsel elicited hearsay statements by Zachary that bolstered the Commonwealth's case and undermined the in-court testimony of other witnesses. *Id.* at 33. Appellant further suggests that trial counsel's reference was prejudicial because it permitted the jury "to infer that . . . Zachary had harmful information[.]" *Id.* at 32.

We agree with the PCRA court that Appellant failed to establish a basis for relief, albeit on different grounds. *See Wiley*, 966 A.2d at 1157. With respect to Detective Gaul's testimony, the record establishes that Detective

- 34 -

Gaul did not testify as to the contents of Raheem Zachary's oral statement to police. Therefore, Appellant's assertion that trial counsel permitted Detective Gaul to present hearsay evidence lacks arguable merit.

Detective Verrecchio, however, testified to a portion of Raheem Zachary's statement. Even assuming that trial counsel should have stricken or otherwise challenged the detective's testimony, the passing reference to Zachary's statement was not so inflammatory that the jury could not fairly decide Appellant's guilt or innocence in this case. Appellant's boilerplate contention that the jury could have concluded that Zachary implicated Appellant is too speculative to warrant relief.[23] Furthermore, as noted above, although Detective Verrecchio's unsolicited testimony could be read to corroborate Cunningham's testimony, the jury also had Respes' prior statement identifying Appellant as the shooter. Therefore, we decline to disturb the PCRA court's ruling on this argument.

(C)   Testimony referring to a firearm that admitted Appellant's guilt

Appellant argues that trial counsel posed a question that conceded Appellant's guilt regarding possession of the murder weapon or a prior bad act. Appellant's Brief at 33-34. During the Commonwealth's direct examination of Detective Verrecchio, the Commonwealth presented evidence that a search warrant was not obtained for Appellant's residence. The

---

[23] Raheem Zachary did not place Appellant at the scene of the murder, but asserted he did not see the shooter.

Commonwealth elicited the detective's testimony to explain the decision not to seek a search warrant for the murder weapon at the time of Appellant's arrest. Specifically, the Commonwealth adduced testimony that it would be unlikely that Appellant would still have the murder weapon at the time of his arrest approximately one month after the shooting.

The challenged testimony arose during the following exchange between trial counsel and Detective Verrecchio regarding the failure of investigators to seek a search warrant for Appellant's residence:

> [Trial counsel]    But let me ask you this.  You wouldn't know whether there was a gun present or not unless you looked; right?
>
> In this case, this case, **you wouldn't know whether [Appellant] is dumb enough to leave a gun someplace unless you look; right**?
>
> [Detective Verrecchio]  There was information that came to light about a weapon.

N.T. 5/22/13, at 231 (emphasis added).

The PCRA rejected Appellant's argument, opining that "trial counsel clearly sought to raise an inference of reasonable doubt by challenging the thoroughness of the Commonwealth's investigation into the murder weapon." PCRA Ct. Op. at 16.  The court further concluded that Detective Verrecchio appropriately indicated and later explained at a sidebar conference that his reference to "information . . . about a weapon" could have introduced evidence of a prior, unrelated charge for possession of a firearm. *Id.* at 15.

Instantly, we agree with the PCRA court that Appellant's narrow focus on trial counsel's question to assert that counsel conceded his guilt did not warrant relief. Trial counsel question to the detective—"you wouldn't know whether the defendant is dumb enough to leave a gun someplace unless you look"—was not a concession of guilt but a challenge to the adequacy of the investigation, in particular, the decision not to seek a warrant for Appellant's home.

With respect to Appellant's challenge to Detective Verrecchio's testimony that he received information about "a weapon," the record establishes that Detective Verrecchio mistakenly believed that Appellant had been charged with possessing a firearm between the murder of Decedent and the time of his arrest. However, Appellant was charged with possession of a firearm well before the murder.[24] Even assuming that trial counsel should have moved to strike Detective Verrecchio's testimony, Appellant cannot establish prejudice as trial counsel subsequently elicited the detective's concession that a murder weapon in this case was not found. N.T., 5/22/13, at 235. Thus, we discern no basis upon which to conclude that this passing reference resulted in prejudice.

(D)    Appellant's statement that he used "Xannies"

---

[24] Appellant also challenges Detective Verrecchio's reference to receiving information about a weapon in his claim that the prosecution knowingly introduced false information. As discussed below, we find no merit to this claim.

- 37 -

J-S02029-18

Appellant, in support of his claim that trial counsel improperly opened the door to Appellant's drug use, refers to the following excerpt of trial counsel's cross-examination of Detective Verrecchio regarding the quality of the investigation and whether there was corroboration of Cunningham's statement to police:

> [Trial counsel] Okay. Now, you said there was a lot of corroboration in Mr. Cunningham's statement. Are you telling the ladies and gentlemen of the jury that the fact that he said he went to the speakeasy wasn't that important to check whether or not that occurred?
>
> [Detective Verrecchio] I'm not telling the ladies and gentlemen of the jury that it's not important. What I'm saying to you is that there is a lot of corroboration in the interview. If you give me one second, I'll point all the corroboration out for you.
>
> Q Okay.
>
> A He says Gunna was the person who did it, and he knew his first name was Chris. That was corroborated.
>
> Q What did that corroborate?
>
> A Gunna's nickname and his real name is Christopher. So that's corroborated.
>
> Q That his name was Gunna?
>
> A No, that he knew him as Gunna but his real name is Chris. That's true.
>
> Q Everybody in the neighborhood knows that; right?
>
> A You're asking me what's corroborated. It's a true statement.
>
> Q Okay. Right.
>
> A I'm telling you what –
>
> Q Go ahead. I'm sorry. Go ahead.

- 38 -

> A    I was walking. I saw [Decedent] and he was ahead of me
> and he was walking through the circle. [Decedent] was walking
> through the circle because that's where he was killed.
>
> Q    Well, okay. Go ahead.
>
> A    Gunna hopped the fence by an alleyway. There is a fence
> there in the alleyway.
>
> Q    Okay.
>
> A    He didn't realize he left the speakeasy. Gunna stopped first
> and was talking to two boys who were sitting on the bench. We've
> identified them as Raheem and Aaron. He was asking them if they
> had any Xannies. **We know he uses Xannies**.
>
> Q    **Who do you know uses Xannies?**
>
> A    **Gunna, your client.**
>
> Q    **Oh, did he tell you that?**
>
> A    **Yes.**
>
> Q    **When did he tell you that?**
>
> A    **When he was arrested.**

N.T., 5/22/13, at 183 (emphasis added). Trial counsel continued to question

the detective regarding Appellant's alleged use of "Xannies" to emphasize that

the detective did not document Appellant's statement in any reports. *Id.* at

183-84.

The trial court called a recess and convened a sidebar conference. At

the conference, trial counsel indicated that he had spoken with Appellant many

times and that he was "almost positive" that Appellant "didn't say that" to the

detective. N.T., 5/22/13, at 188-89. The court called Detective Verrecchio to

clarify the circumstances under which Appellant allegedly made the statement

to the detective. According to the detective, after Appellant's arrest,

- 39 -

it was explained to him what he was there for, and he was just, like, I just do my Xannies. It was kind of, like, just blowing everything off.

\*\*\*

It was more like, I didn't kill nobody. I just do my Xannies. I ain't sweating this.

*Id.* at 193.

Further discussions at the conference ensued about whether the testimony violated Appellant's right to post-arrest silence. Trial counsel then requested that the detective's testimony regarding be stricken. The trial court granted the motion, and when the jury returned from lunch, the court issued the following instruction:

[M]embers of the jury, before lunch, you may have heard a comment about [Appellant] allegedly made that he, in fact, uses Xannies.

That comment is stricken from the record, so if anyone wrote it down, you have to strike it because you treat it as if it was never said.

*Id.* at 198.

The PCRA court concluded Appellant's argument was meritless. According to the court, trial counsel did not reveal that Appellant had a drug problem and reasonably used the testimony to challenge the thoroughness of the investigation. PCRA Ct. Op. at 14.

Appellant now contends that his claim has arguable merit because trial counsel examination led to Detective Verrechio confirming that Appellant used "Xannies." Appellant asserts that trial counsel's decision to ask who used

- 40 -

Xannies was unreasonable because trial counsel did not know the answer. Lastly, Appellant states that trial counsel's more extended examination regarding Detective Verrecchio's testimony was prejudicial because it corroborated Cunningham's statement to police that Appellant asked for "Xannies" before the murder and it implicated him in prior bad acts.

Contrary to Appellant's arguments, trial counsel did not "open the door" to the references to "Xannies." Rather, the implications of drug use were raised in Cunningham's statement to the police and then in Detective Verrecchio's narrative testimony regarding points of corroboration. Thus, Appellant's assertion that trial counsel was ineffective for "opening the door" to the issue of drug use lacks arguable merit.

Appellant further argues that he was entitled to relief because trial counsel failed to move for a mistrial. However, in light of the trial court's striking the offending testimony and issuing a limiting instruction, we discern no basis to conclude that the trial court would have granted such a motion. Therefore, Appellant has not established arguable merit to his argument that he was entitled to a mistrial.

In any event, having reviewed the entirety of the trial record, we conclude that Appellant cannot establish prejudice based on the Detective Verrecchio's testimony referring to Appellant's statement at the time of arrest. As noted previously, even if the reference to Appellant's use of "Xannies" improperly bolstered Cunningham's statement identifying Appellant as the

shooter, the jury was still entitled to credit Respes' prior statement. Therefore, no relief is due.

### 5. Direct appeal counsel's failure to challenge hearsay evidence

Appellant, in his next issue, claims that the PCRA court erred in concluding that there was no merit to the claim that his direct appeal counsel was ineffective for failing to challenge the admission of hearsay evidence based on the references to anonymous tips. Appellant's Brief at 31. This claim is related of Appellant's assertion that trial counsel was ineffective for opening the door to such evidence, which was discussed in issue 4(A). In any event, our review reveals that trial counsel did not object to the testimony regarding anonymous tips or otherwise preserve this issue for review on direct appeal. *See* 42 Pa.C.S. § 9544(b); *Commonwealth v. Blakeney*, 108 A.3d 739, 777 (Pa. 2014). Accordingly, Appellant's claim that direct appeal counsel was ineffective for raising this claim lacks merit.

### 6. Trial counsel's failure to object to or request a mistrial for discovery violations

Appellant's next issue focuses on the PCRA court's dismissal of his claims that trial counsel should have objected to and requested a mistrial due to alleged discovery violations. In support, he refers to (1) the relocation paperwork completed by Aaron Respes, (2) the anonymous tips, (3) threats against witnesses; (4) Decedent's statements to Hall; and (5) Appellant's statement to Detective Verrecchio that Appellant used "Xannies."

Pennsylvania Rule of Criminal Procedure 573 provides, in relevant part, that "the Commonwealth shall disclose to the defendant's attorney . . . any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth." Pa.R.Crim.P. 573(B)(1)(b). This Court has held that an inculpatory statement made to a police investigator, but not in the possession or control of the attorney for the Commonwealth is not subject to disclosure under Pa.R.Crim.P. 573(B)(1)(b). *See Commonwealth v. Sullivan*, 820 A.2d 795, 804 (Pa. Super. 2003). *But see Commonwealth v. Burke*, 781 A.2d 1136, 1142 (Pa. 2001) (discussing exculpatory information known to police but not within the possession of the Commonwealth).

Moreover, the remedy for an alleged violation of the rules of disclosure are discretionary with the trial court. *Burke*, 781 A.2d at 1143. It is further well established that:

> [a] motion for mistrial is a matter addressed to the discretion of the court. A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.
>
> A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.
>
> The law presumes that jurors will follow the trial court's instructions.

***Commonwealth v. Gillen***, 798 A.2d 225, 231 (Pa. Super. 2002) (citations omitted).

With respect to Appellant's first four arguments, Appellant fails to establish that the Commonwealth did not disclose the information or material. Therefore, Appellant claims of ineffectiveness fail for lack of arguable merit.

As to Appellant's fifth argument, regarding Detective Verrecchio's testimony that Appellant told the detective that Appellant used "Xannies," Appellant fails to demonstrate that this information resulted in prejudice. As noted above, the testimony was stricken and the trial court issued an instruction for the jury to disregard the reference. ***See Gillen***, 798 A.2d at 231.

### 7. Trial counsel's failure to elicit testimony that Kamac was a possible shooter by impeaching witnesses

Appellant, in his next issue, claims that the PCRA court erred in dismissing his assertion that trial counsel failed to cross-examine Detective Gaul with alleged exculpatory evidence that Kamac shot Decedent. Appellant's Brief at 38-39. According to Appellant, the PCRA court misconstrued his claim. Specifically, he argues that that the PCRA court focused on trial counsel's impeachment of Detective Gaul using evidence that Kamac threatened Decedent before the shooting. He contends his present claim is based on trial counsel's failure to confront the detective with evidence that others named Kamac as the shooter.

However, as noted above, Appellant does not establish the existence of any admissible exculpatory evidence that Kamac shot Decedent.[25] Additionally, Appellant fails to establish any prejudice resulting from trial counsel's failure to confront Detective Gaul with evidence that there were rumors that Kamac shot Decedent, where trial counsel cross-examined the detective about Kamac's stronger motive to kill Decedent.

### 8. Trial counsel's failure to object to the prosecutor's numerous frauds upon the court

Appellant's next issue relates to his allegations that the Commonwealth admitted false evidence, namely: (1) threats against Respes and (2) Detective Verrecchio's reference to receiving information regarding the murder weapon. Appellant's Brief at 40-44.

Our review is governed by the following principles:

The prosecution may not knowingly and deliberately misrepresent the evidence in order to gain a conviction. Nevertheless, a claim of purposeful prosecutorial misrepresentation will not stand if examination of the record fails to reveal any indication of deceptive tactics on the part of the prosecution. Minor discrepancies in the Commonwealth's case will not be considered false evidence.

***Commonwealth v. Ali***, 10 A.3d 282, 294 (Pa. 2010) (citations omitted).

With respect to Respes, Appellant notes that Respes testified that he was not threatened and that he only sought relocation to enable his mother

---

[25] As noted above, Appellant's sole reference to exculpatory evidence was that Yvette Morris indicated that Tiara Young heard rumors that Kamac shot Decedent.

J-S02029-18

to move to a better neighborhood. From this Appellant complains that all evidence that Respes was threatened was false and the Commonwealth knowingly admitted false evidence of threats. Such a boilerplate allegation false to establish "fraud" or prosecutorial misconduct. *See id.*

With respect to Detective Verrecchio's testimony that he obtained information regarding a weapon, we have previously noted that Detective Verrechio's reference was premised on a mistake. Appellant, however, asserts that the Commonwealth must have "intended to sneak this false evidence in through Dt. Verrecchio's testimony." Appellant's Brief at 44.

Appellant's assertions fail to establish any arguable merit to his argument that the Commonwealth knowingly attempted to introduce false evidence. Indeed, as discussed above, the detective testified to this matter on cross-examination by trial counsel, and there is no indication that the Commonwealth intended to admit the evidence. Thus, no relief is due.

## 9. Trial counsel's failure to object to the numerous instances of prosecutorial misconduct in closing argument

In his next issue, Appellant claims that the PCRA court erred in rejecting his argument that trial counsel failed to object to the Commonwealth's closing argument. Appellant asserts that the prosecutor expressed her personal opinions by calling a defense witness a liar, shifted the burden of proof by noting Appellant did not call additional alibi witnesses, and established Appellant's guilt when the prosecutor referred to him as a stone cold killer. Appellant's Brief at 44-47.

As our Supreme Court has noted,

[i]t is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor **may comment on the credibility of witnesses**. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor.

**Commonwealth v. Chmiel**, 889 A.2d 501, 544 (Pa. 2005) (citations omitted and emphasis added).

Here, the instances that Appellant characterizes as the prosecutor expressing her personal opinion were simply her argument regarding the credibility of certain witnesses and the credibility of Appellant's alibi defense. **See** N.T. Trial, 5/28/13, at 79-81. Moreover, trial counsel had made Detectives Gaul and Verrecchio out to be liars. **See id.** at 23, 25-26, 32-33, 41, 44-45. Thus, the Commonwealth's argument concerning credibility is a logical and vigorous response.

Moreover, we agree with the PCRA court that "[t]he prosecutor's comment that [Appellant's] associates Natika Hawkins, Dooler, and Black were not at trial is a logical attack on alibi witness [Anara] Brown's credibility, not an impermissible shifting of the burden of proof." PCRA Ct. Op. at 18. As to the use of the phrase "stone cold killer," this is nothing more than oratorical flair. [CITE]. Thus, we discern no basis to disturb the PCRA court's ruling that Appellant failed to establish arguable merit to his claim that trial counsel was ineffective for failing to object during closing argument.

## 10. Trial counsel's failure to object to the prosecutor improperly focusing the jury's attention on the element of fear in order to inflame the passions of the jury

Appellant's next issue focuses on the PCRA court's rejection of his claim that trial counsel failed to object to prosecutorial misconduct based on the Commonwealth's references to and admission of evidence of threats. Appellant's Brief at 48-51. Appellant contends the Commonwealth intentionally inflamed the passions of the jury such that it could not have rendered a fair verdict.

However, as discussed above, the threat evidence was admitted for the narrow purpose of evaluating the credibility of Cunningham and Respes and specifically weighing their prior statements to the police versus their trial testimony recanting their statements. As we have also stated above, Appellant cannot establish prejudice in light of the trial court's cautionary instructions. Moreover, we note that trial counsel did object shortly after the above-recited passage when the Commonwealth's argument began to implicate the specific facts of this case. Thus, Appellant failed to establish arguable merit to this re-casted claim of ineffectiveness.

To summarize our review of Appellant's first ten issues claiming ineffective assistance of counsel, we conclude Appellant failed to establish arguable merit in Issues 1, 3(A)-(C), 4(A) 5, 6 (A)-(D), 7, 8, 9, and 10. We further conclude that Appellant failed to establish prejudice in Issues 3(D), 4(B)-(D), and 6(E). For these reasons, we decline to disturb the PCRA court's rulings on Appellant's individual claims of ineffective assistance of counsel.

## 11. Cumulative effect of the errors

Appellant's next issue raises a claim of cumulative error. According to

Appellant,

> [c]ounsel opened the door to a wide range of hearsay evidence
> and prior bad acts. All of which went directly towards [A]ppellant's
> guilt. [T]rial counsel not only elicited prejudicial information but
> allowed the prosecutor to undermine[ A]ppellant's trial. The
> prosecutor [used] the victim hearsay statements as substantive
> evidence of guilt, labeled [A]ppellant's alibi defense as fraudulent,
> used the element of fear to inflame the jury, and [failed] to turn
> over pretrial discovery material, which created a trial by ambush.
> Also[,] the prosecutor introduce[d] false evidence into the guilt of
> [A]ppellant. Moreover, trial counsel had witnesses who were
> willing to come to court and testify to [A]ppellant's innocence and
> counsel failed to used exculpatory evidence within his possession.

Appellant's Brief at 51. Appellant concludes that "these errors destroyed the

confidence of [A]ppellant's trial." *Id.* at 52.

The Pennsylvania Supreme Court has stated:

> We have often held that "no number of failed [ ] claims may
> collectively warrant relief if they fail to do so individually."
> However, we have clarified that this principle applies to claims that
> fail because of lack of merit or arguable merit. When the failure
> of individual claims is grounded in lack of prejudice, then the
> cumulative prejudice from those individual claims may properly be
> assessed.

*Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) (citations omitted).

As noted above, Appellant did not establish prejudice with respect to the

following individual issues: (1) Issue 2, which relates to hearsay evidence

about the confrontation between Kamac and Decedent; (2) Issue 3(D), which

relates to the prosecutor's question of Cunningham regarding their meeting

before trial, (3) Issue 4(B), which relates to Detective Verrecchio's references

to Raheem Zachary; (4) Issue 4(C) which relates to Detective Verrecchio's information about a weapon; and (5) Issues 4(D) and 6(E), which relate to Detective Verrecchio's reference to Appellant's statement regarding "Xannies." Following our review, we conclude that the combined effect of these issues did not undermine the reliability of the jury's verdict. As noted above, Respes unequivocally identified Appellant as the shooter in his prior statement to the police and at the preliminary hearing. Although Respes recanted his identification of Appellant at trial, he continued to suggest that the shooter "looked like" Appellant. Thus, Appellant's claim of cumulative error fails.

## 12. PCRA court's error by denying Appellant's PCRA petition without an evidentiary hearing, failing to grant leave to amend, and accepting PCRA counsel's *Finley* letter & 13. PCRA counsel's ineffectiveness

Appellant's final two issues, which we address together, allege error in the PCRA court's decisions to (A) deny relief without a hearing, (B) deny his request to file an amended petition, and (C) permit PCRA counsel to withdraw despite Appellant's allegations of PCRA counsel's ineffectiveness. Appellant's Brief at 11-12.

### (A)  Evidentiary hearing

Appellant argues that the PCRA court erred in declining to hold an evidentiary hearing. He contends that he was entitled to a hearing to consider claims that the PCRA court dismissed based on findings that trial counsel acted with a reasonable strategic basis. He further contends that the credibility of

Raheem Zachary's recent statements indicating Appellant did not shoot Decedent were at issue.

It is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008).

However, because we have concluded above that Appellant failed to establish a genuine issue of material fact on any of his ineffectiveness claims, we discern no error in the PCRA court's decision to deny Appellant's petition without a hearing. **See id.**

## (B)    Denial of request to amend petition

Appellant argues that the PCRA court erred by failing to grant him leave to amend his PCRA petition and instead accepting PCRA counsel's petition to withdraw. However, this contention amounts to little more than a bald claim in Appellant's brief. **See** Appellant's Brief at 11 (noting that the PCRA court found his claims to be largely incomprehensible and this alone "should have given the PCRA court reason to grant leave to amend these defects").

The decision whether to permit amendment is within the PCRA court's discretion. **See Commonwealth v. Williams**, 732 A.2d 1167, 1191 (Pa. Super. 1999). Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). While Rule 905 provides for liberal

amendment, when such amendment is frivolous or meritless, such amendment is unnecessary. **See** Pa.R.Crim.P. 907(1).

Instantly, the PCRA court conducted an independent review of the record and determined that no relief was due. Thus, permitting amendment of Appellant's PCRA petition was unnecessary. While the PCRA court found portions of Appellant's brief to be incomprehensible, the court addressed each potential issue it perceived from Appellant's petition and his Rule 907 response. Additionally, Appellant has adduced no further materials or claims in this appeal worthy of further relief. Therefore, we discern no error on the part of the PCRA court in denying Appellant's request to amend his PCRA petition.

(C)   PCRA counsel's **_Turner/Finley_** letter and ineffectiveness

Finally, Appellant asserts that PCRA counsel failed to follow the standards of **_Turner/Finley_** when seeking leave to withdraw. Appellant's Brief at 55. Appellant further raises claims that PCRA counsel was ineffective for the following reasons:

1. Failure to investigate Tiara Young;

2. Failure to raise trial counsel ineffectiveness for failing to interview and call Raheem Zachary;

3. Failure to raise trial counsel ineffectiveness for failing to investigate Mr. Cunningham's claim of police brutality;

4. Improvidently filing a **_Turner/Finley_** letter and failing to follow the standard of **_Turner/Finley_**; and

5. Failing to discover newly discovered evidence of a **Brady v. Maryland**[26] violation, namely Appellant's belief that Aaron Respes received a deal in exchange for his testimony.

Appellant's Brief at 52.

In order to withdraw pursuant to **Turner/Finley**,

[i]ndependent review of the record by competent counsel is required before withdrawal is permitted. Such independent review requires proof of:

1. A "no-merit" letter by PCRA counsel detailing the nature and extent of his review;

2. The "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed;

3. The PCRA counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

4. The PCRA court conducting its own independent review of the record; and

5. The PCRA court agreeing with counsel that the petition was meritless.

**Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009) (citation and

brackets omitted). Additionally,

PCRA counsel who seeks to withdraw must contemporaneously serve a copy on the petitioner of counsel's application to withdraw as counsel, and must supply to the petitioner both a copy of the "no-merit" letter and a statement advising the petitioner that, in the event that the court grants the application of counsel to withdraw, he or she has the right to proceed *pro se* or with the assistance of privately retained counsel.

**Commonwealth v. Widgins**, 29 A.3d 816, 818 (Pa. Super. 2011) (citation

and emphasis omitted).

---

[26] **Brady v. Maryland**, 373 U.S. 83 (1963).

Instantly, PCRA counsel complied with the procedural requirements for withdrawing from representation. Therefore, Appellant's assertion that counsel failed to follow the **Turner/Finley** standard to withdraw warrants no relief.

As to the PCRA counsel's alleged failure to investigate Tiara Young and Raheem Zachary as witnesses,[27] we have previously concluded that those arguments lacked merit. Thus, there can be no ineffective assistance of PCRA counsel in relation to these claims.

As to the failure to investigate Cunningham's claim of police brutality, we have already concluded that the PCRA court properly determined that further evidence regarding Detective Pitts was not relevant or admissible at trial. Thus, Appellant's claim that PCRA counsel should have conducted further research into this matter lacks arguable merit.

Finally, as to Appellant's assertion of a **Brady** violation, Appellant contends that there was a cooperation agreement between Respes and the Commonwealth. Specifically, Appellant claims that the Commonwealth withdrew attempted murder charges against Respes shortly after Appellant was sentenced.

However, Appellant was well aware of the open charges against Respes at trial. During direct examination, the Commonwealth questioned Respes

---

[27] We note that PCRA counsel averred that he attempted to contact Tiara Young, but that she could not be found. Additionally, Appellant raised his claim regarding Zachary in response to the PCRA court's Rule 907 notice.

regarding Respes' open case for attempted murder. N.T., 5/21/13, at 153.
The Commonwealth further elicited Respes' testimony that there was no deal
with the police or the Commonwealth in exchange for his testimony. *Id.* at
154. To the extent Appellant now speculates that a cooperation agreement
was in place, we note that Respes recanted his identification of Appellant at
trial and was not a cooperative witness for the Commonwealth. Thus,
Appellant's claim that the Commonwealth violated *Brady* does not warrant
relief.

Order affirmed. Application to vacate and remand denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/18

## IN THE SUPERIOR COURT OF PENNSYLVANIA
## EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA : No. 3609 EDA 2016

                                   :

v.                               :

                                   :

CHRISTOPHER GOODWIN        :

                                   :

           Appellant           :

## **ORDER**

IT IS HEREBY ORDERED:

THAT the application filed July 13, 2018, requesting reargument of the decision dated June 28, 2018, is DENIED.

                                   PER CURIAM



**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 175 Progress Drive, Waynesburg, PA 15370 _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year     Yes ☐     No ☐
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit     Yes ☐     No ☐
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier     Yes ☐     No ☐
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights     Yes ☐     No ☐
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/06/2018 _____ _Ron. Mc Gal_ _____ _____
                                *Attorney-at-Law / Pro Se Plaintiff*                  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☑ 8. Habeas Corpus     2254
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.     *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ , counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____ _____ _____
                      *Attorney-at-Law / Pro Se Plaintiff*                  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

TJS

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | | |
|---|---|---|---|
| Goodwin | : | CIVIL ACTION | |
| | : | | |
| v. | : | | |
| | : | NO. **18  5269** | |

Wetzel, et. al.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     **2254** (☒)

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     (☐)

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (☐)

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     (☐)

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.     (☐)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (☐)

| | | |
|---|---|---|
| DEC - 6 2018 | *Dal Mc Garl* | |
| **Date** | **Deputy Clerk** | **Attorney for** |

| | | |
|---|---|---|
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02