**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER GOODWIN,** | : | **CIVIL ACTION** |
| | : | **(habeas corpus)** |
| **Petitioner** | : | |
| | : | **NO. 18-5269** |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**SECOND AMENDMENT AND SUPPLEMENT TO PETITION**
**FOR WRIT OF HABEAS CORPUS**

Petitioner, Christopher Goodwin, though counsel, submits this Second Amendment and

Supplement to his Petition for Writ of Habeas Corpus.  Herein, Mr. Goodwin supplements the

following previously-raised claims:[1]

Claim H:    Trial counsel was ineffective for failing to investigate and present
available evidence about Detective James Pitts' misconduct, and Mr.
Goodwin's due process rights were violated.

Claim I:    Relief is warranted due to the prejudicial effects of the cumulative errors
in this case.

He also raises a new claim for relief:

Claim J:    The Commonwealth violated *Brady v. Maryland* and its progeny by
failing to disclose (a) evidence of Detective Thomas Gaul's misconduct
and (b) the lack of documentation of any anonymous tips received by
police.  To the extent that trial counsel could have obtained this evidence,
trial counsel was ineffective.

---

[1] Mr. Goodwin's memorandum of law filed in October 2019 (ECF No. 34) addresses Claims A
through I.  Those claims were raised in Mr. Goodwin's pro se habeas petition (ECF No. 2) and/or
his counseled amended petition (ECF No. 23).  The memorandum of law is cited herein as
"MOL."

**Abbreviated Background**

The factual and procedural background in this case is fully set forth in other pleadings, particularly the Amended Petition for Writ of Habeas Corpus filed in 2019 (ECF No. 22).  In summary, Mr. Goodwin was charged with first-degree murder and related offenses arising from the shooting death of Dwayne Isaacs on June 26, 2011.  No witness at trial implicated Mr. Goodwin as the shooter.  Andre Cunningham and Aaron Respes had identified Mr. Goodwin as the shooter in statements to police after being detained for lengthy periods of time, but both men recanted their statements to police.  Before trial, Cunningham informed a defense investigator that Philadelphia Homicide Detective James Pitts had choked him during his interrogation and that Detective Pitts and other detectives coerced him into implicating Mr. Goodwin.  Cunningham testified to this coercion and abuse at Mr. Goodwin's trial, and he testified that his inculpatory statement was untruthful.  Similarly, Respes testified that the police threatened to prosecute him for conspiracy to commit murder if he did not identify Mr. Goodwin as the shooter.  Respes said the police told him that they already knew Mr. Goodwin was the shooter, and they just needed him to say so.

At trial, Detective Thomas Gaul repeatedly testified that the Philadelphia Police Homicide Unit received anonymous tips that Mr. Goodwin was the shooter in this case.  He testified that, because of the anonymous tips, this case was never "a whodunit;" it was just a matter of getting Cunningham and Respes to provide statements implicating Mr. Goodwin.  Although Detective Gaul testified to the content of the anonymous tips, he never testified to the number of anonymous tips the police received or to the dates or times when the calls came in.  *See* Claim A (MOL at 3-10) (asserting that trial counsel was ineffective for failing to object to the testimony regarding the content of the anonymous tips, which violated Mr. Goodwin's

Confrontation Clause rights).  The detective simply stated, "[P]eople would call and say, Look, I know who did that shooting out there.  They wouldn't say how they know who did it, but they would supply a name or nickname.  And all the consistent tips were [Mr. Goodwin]."  NT 5/22/13 at 69.

<div align="center">

**Newly Discovered Evidence**

</div>

**I.     Information Reported by The *Philadelphia Inquirer* in May 2021**

On May 13, 2021, the Philadelphia Inquirer published an article about numerous cases involving allegations or findings of misconduct by Detective Pitts.  Samantha Melamed, *Dozens accused a detective of fabrication and abuse. Many cases he built remain intact,* Philadelphia Inquirer (May 13, 2021), https://www.inquirer.com/news/philadephia-homicide-detective-james-pitts-losing-conviction-exonerations-murder-20210513.html.  On the same date, the Philadelphia Inquirer published a database of cases involving allegations or findings of misconduct by numerous Philadelphia homicide detectives.  *The Homicide Files*, Philadelphia Inquirer (May 13, 2021), https://www.inquirer.com/crime/inq2/philadelphia-murder-homicide-cases-database-20210507.html#/.  The database includes information about 37 cases in which individuals complained of misconduct by Detective Pitts between 2001 and 2013.  Several of these cases resulted in acquittals of criminal defendants, exonerations after conviction, and/or settlements paid by the City of Philadelphia after civil lawsuits were filed challenging misconduct by Detective Pitts.  Among the cases in the database are the following:

   a.     The City of Philadelphia paid $45,000 to settle a civil lawsuit in which Sharee Brinson, whom police believed had information about a 2013 shooting, alleged that Detective Pitts verbally abused her, subjected her to a 30-hour interrogation

without cause, and continued to detain her even after she reported having chest pains.

b.      The City of Philadelphia paid $50,000 to settle a civil lawsuit in which Freddie Robinson, the uncle of a homicide victim, alleged that in April 2013 Detective Pitts struck him, cursed at him, detained him in a room for 16 hours without food or drink or access to a restroom, and illegally searched his cellphone.

c.      Philadelphia Police Internal Affairs sustained allegations of misconduct by Detective Pitts against Zshani Al-Rasul, a potential witness, who reported that in June 2013 Detective Pitts detained her for three days with little food and threatened her with jail, unemployment, and termination of parental rights.

d.      Philadelphia Police Internal Affairs sustained allegations of misconduct by Detective Pitts during a January 2012 encounter with 84-year-old Leroy Cook, who was the grandfather of a potential witness to a crime.

e.      Obina Onyiah was exonerated after having been convicted of murder based in part on a 2010 confession obtained by Detective Pitts, whom Onyiah reported had physically assaulted and threatened him during a 10-hour interrogation.

f.      All charges against Unique Drayton were withdrawn after the Philadelphia County Court of Common Pleas suppressed Drayton's 2009 confession to murder based on a finding that the confession was coerced by Detective Pitts.

g.      Amin Speakes was acquitted at a trial for murder when video security-camera footage proved Speakes was across town at the time of the murder.  The prosecution relied on a 16-year-old with a learning disability who testified that in 2009 Detective Pitts beat him, threatened to lock him up, and interviewed him for

six hours without a parent before he signed a statement falsely implicating Speakes.

h.      Nafis Pinkney was acquitted of a double murder after having signed a confession obtained by Detective Pitts and another detective in 2009.  The City of Philadelphia later paid $750,000 to settle a civil lawsuit in which Pinkney alleged that Detective Pitts coerced his false confession by means of threats, intimidation, sleep deprivation, and physical abuse during a 24-hour interrogation.

i.      The Philadelphia Court of Common Pleas overturned Dwayne Thorpe's murder conviction, finding that the conviction was based on a fabricated witness statement obtained by Detective Pitts in 2008.  The court concluded in an opinion that Detective Pitts "continuously and systematically makes use of a distinct group of abusive tactics designed to overcome an interrogation subject's resistance and coerce him or her into signing a statement."

j.      Hassan Bennett was exonerated after having been convicted of murder based on statements obtained by Detective Pitts.  Several witnesses testified that Detective Pitts used physical abuse and threats to coerce them into giving false statements against Bennett in 2006.  Detective Pitts' name did not appear on certain witnesses' written statements despite Pitts' interaction with those witnesses.

The Philadelphia Inquirer database also includes information about two cases (in addition to Mr. Goodwin's case) in which individuals complained of misconduct by Detective Thomas Gaul:

a.      Prosecutors withdrew all criminal charges against Ruben Mora, and the City of Philadelphia paid $45,000 to settle Mora's civil lawsuit alleging that in 2013

Detective Thomas Gaul and another detective coerced a statement against him from the only eyewitness in the case and conducted an improper photo array to get the witness to identify him.

b.      In 2007, prosecutors admitted that they made a mistake and prosecuted the wrong man when they sought a murder conviction against Kevin Felder.  The case against Felder was based on four inculpatory witness statements, though all four witnesses recanted their statements and testified that the statements were the result of threats and intimidation by homicide detectives.  The City of Philadelphia paid $23,000 to settle the civil suit filed by one of the witnesses, Richard Carpenter, who alleged that Detective Gaul physically abused and threatened him and his family in 2006.

The Commonwealth did not disclose any of this information to Mr. Goodwin before or during his trial.

## II.      Information Received from the Commonwealth on September 2, 2021

In connection with these habeas proceedings, Mr. Goodwin requested access to the complete Philadelphia Police Department homicide file ("homicide file") regarding Dwayne Isaacs's shooting and the complete District Attorney's Office file ("DAO file") regarding Mr. Goodwin's prosecution.  The Commonwealth provided copies of those files to undersigned counsel on September 2, 2021.  The homicide file and the DAO file contain information that was not previously disclosed to Mr. Goodwin or his defense counsel: namely, neither the homicide file nor the DAO file contains any documentation of anonymous tips implicating Mr. Goodwin in the shooting of Mr. Isaacs.

### III.     Information Received from the Commonwealth on December 7, 2021

In connection with these habeas proceedings, Mr. Goodwin requested any information in the Commonwealth's possession about misconduct by Detective James Pitts and/or Detective Thomas Gaul.  On December 7, 2021, the Commonwealth provided documents in response to that request.  The documents include a September 2020 Philadelphia Police Department misconduct disclosure stating that Detective Gaul is the subject of an ongoing investigation by Internal Affairs; there is no information about the reasons for the investigation.

The Commonwealth also provided undersigned counsel with a letter dated December 7, 2021, stating that Detective Pitts has been transferred to the Delaware Valley Intelligence Center (DVIC) pending the outcome of an internal police department investigation.  Additionally, the Commonwealth provided 263 pages of documents about misconduct by Detective James Pitts, comprising the following:

a.  A June 2018 opinion from the Philadelphia Court of Common Pleas in *Commonwealth v. Dwayne Thorpe*.  Pitts Disclosures at 2-43.

b.  A March 2019 order of the Philadelphia Court of Common Pleas granting the Commonwealth's motion to *nolle prosequi* all charges in *Commonwealth v. Dwayne Thorpe*.  Pitts Disclosures at 44.

c.  A November 2017 order of the Philadelphia Court of Common Pleas vacating the conviction in *Commonwealth v. Dwayne Thorpe* upon finding that relief is due on two claims, including that "[a]fter-discovered evidence establishes that Detective Pitts' habitually coercive conduct towards witnesses in custodial interrogations."  Pitts Disclosures at 45-48.

7

d.  The transcript of a hearing held on March 27, 2019, in *Commonwealth v. Dwayne Thorpe* during which the Philadelphia Court of Common Pleas granted the Commonwealth's motion to *nolle prosequi* all charges.  Pitts Disclosures at 49-53.

e.  A September 2018 misconduct disclosure from the Philadelphia Police Department, Pitts Disclosures at 55, that attaches two documents:

   i.  An Internal Affairs Division Investigative Conclusion in IAD No. 02-1009 sustaining an allegation that Detective Pitts punched his wife in the stomach on January 18, 2002; noting that Detective Pitts admitted punching his wife one time; and not sustaining Detective Pitts' allegation that his wife struck him during the incident.  The report credited the statement Detective Pitts made to his wife that he hit himself in the face (and that his wife did not hit him in the face, as he alleged in his own complaint) to buy himself more time when the officers arrived at the couple's home following the 911 call made by his wife. Pitts Disclosures at 56; *see also* Pitts Disclosures at 123-26 (providing additional details about the incident and the investigation).

   ii.  Police Board of Inquiry (PBI) Findings regarding IAD No. 02-1009 stating that that Detective Pitts was suspended for one day on January 18, 2002.  Pitts Disclosures at 57.

f.  A September 2020 misconduct disclosure from the Philadelphia Police Department stating that Detective Pitts is the subject of two ongoing investigations, Pitts Disclosures at 58, and attaching the following documents:

   i.    PBI Findings regarding IAD No. 12-004 stating that that Detective Pitts was found not guilty of abuse of authority on October 3, 2013.[2]  Pitts Disclosures at 59.

  ii.    A conclusion in IAD No. 12-0041 sustaining allegations against Detective Pitts of abuse of authority and damage to private property regarding on January 17, 2012.  The report is about Detective Pitts detaining an 84-year-old man for over six hours without justification.  Pitts Disclosures at 60-62; *see also* Pitts Disclosures at 121-23 (providing additional details about the incident and the investigation).

 iii.    PBI Findings regarding IAD No. 13-0592 stating that that Detective Pitts was found not guilty of abuse of authority and failure to comply with police orders on June 29, 2016.  Pitts Disclosures at 63.

 iv.    A conclusion in IAD No. 13-0592 sustaining allegations against Detective Pitts of abuse of authority; improper detention; departmental violation of Directive #82 "Adult Detainees in Police Custody;" improper procedure; and failure to supervise.  The report notes that Detective Pitts and another detective held a detainee for 47 hours without giving her anything to eat or drink except a pretzel and soda.  Pitts Disclosures at 64-66; *see also* Pitts Disclosures at 126-29 (providing additional details about the incident and the investigation).

  v.    Two PBI Findings regarding IAD Nos. 17-1549 and 17-1573 noting two ISS Investigations into Detective Pitts, each of which states, "This is an on-going

---

[2] In another document disclosed, the Commonwealth wrote, "Although the PBI found Detective Pitts not guilty, it was, primarily, because there was no written policy for detaining witnesses— which is also troubling."  12/7/2021 Pitts Disclosures at 97.

investigation at this time."  Pitts Disclosures at 67-68; *see also* Pitts Disclosures

at 129 (stating that two investigations into Detective Pitts were ongoing as of

April 23, 2021, and that Detective Pitts has been administratively reassigned

within the police department and removed from street duty).

g.  A May 2021 order of the Philadelphia Court of Common Pleas granting the

Commonwealth's motion to *nolle prosequi* all charges in *Commonwealth v. Obina*

*Onyiah*.  Pitts Disclosures at 69.

h.  An April 2021 order of the Philadelphia Court of Common Pleas granting the

Petitioner's motion for a new trial in *Commonwealth v. Obina Onyiah*.  Pitts

Disclosures at 70.

i.  The Commonwealth's April 2021 answer to the post-conviction petition in

*Commonwealth v. Obina Onyiah* detailing that Onyiah had proven his actual

innocence and that his false confession had been coerced by Detective Pitts.  Pitts

Disclosures at 71-104.

j.  April 2021 joint stipulations of the parties in *Commonwealth v. Obina Onyiah*

addressing, *inter alia*, sustained instances of misconduct by Detective Pitts that were

not disclosed to Onyiah's defense counsel.  Pitts Disclosures at 105-263.

Amendment and Supplement to Claims for Relief

**Claim H.       The Commonwealth violated _Brady v. Maryland_ and its progeny by failing to disclose evidence of Detective James Pitts' misconduct, and trial counsel was ineffective.**

All facts and allegations set forth elsewhere in this Second Amendment and Supplement, as well as those contained in Mr. Goodwin's pro se habeas petition (ECF No. 2), his counseled amended petition (ECF No. 23), and his memorandum of law (ECF No. 34), are incorporated as if fully set forth herein.

The Commonwealth violated its due process duties under _Brady v. Maryland_, 373 U.S. 83 (1963) and its progeny by failing to disclose to Mr. Goodwin evidence of Detective Pitts' misconduct in three dozen other cases.  To the extent that trial counsel could have obtained this evidence through investigation, trial counsel was ineffective for failing to investigate this evidence and present it at Mr. Goodwin's trial.  But for the due process violation and/or trial counsel's ineffective assistance, there is a reasonable probability that the outcome of Mr. Goodwin's trial would have been different.

**Claim I.       Mr. Goodwin is entitled to relief from his convictions because of the prejudicial effects of the cumulative errors in this case.**

All facts and allegations set forth elsewhere in this Second Amendment and Supplement, as well as those contained in Mr. Goodwin's pro se habeas petition (ECF No. 2), his counseled amended petition (ECF No. 23), and his memorandum of law (ECF No. 34), are incorporated as if fully set forth herein.

Each of the claims discussed in Mr. Goodwin's habeas petition, as amended and supplemented, is an independent basis for relief from Mr. Goodwin's convictions.  However, should the Court find that Mr. Goodwin is not entitled to relief based on any single claim for

11

failing to show prejudice, he is entitled to relief because the cumulative effect of the errors

rendered his trial fundamentally unfair, violating his right to due process.

**Claim J.**     **The Commonwealth violated *Brady v. Maryland* and its progeny by failing to disclose (a) evidence of Detective Thomas Gaul's misconduct and (b) the lack of documentation of any anonymous tips received by police.  To the extent that trial counsel could have obtained this evidence, trial counsel was ineffective.**

The Commonwealth violated its due process duties under *Brady v. Maryland*, 373 U.S.

83 (1963) and its progeny by failing to disclose material, exculpatory evidence, including

impeachment evidence.  That evidence included (1) the lack of any documentation by police of

anonymous tips implicating Mr. Goodwin in the shooting and (2) evidence of Detective Thomas

Gaul's misconduct in at least two other cases.  To the extent that trial counsel could have

obtained this evidence through investigation, trial counsel was ineffective for failing to

investigate this evidence and present it at Mr. Goodwin's trial.  But for the due process violation

and/or trial counsel's ineffective assistance, there is a reasonable probability that the outcome of

Mr. Goodwin's trial would have been different.

**B.     Timeliness and Exhaustion**

These claims and supplements are timely under 28 U.S.C. § 2244(d)(1)(D), which allows

a petitioner to file a habeas petition within one year of "the date on which the factual predicate of

the claim or claims presented could have been discovered through the exercise of due diligence."

Here, he learned of the facts supporting these claims between May and December 2021.

These claims, as amended and supplemented, have not been presented to the state courts;

however, similar claims were presented to the state courts, and exhaustion is an affirmative

defense that is subject to waiver.  *See* 28 U.S.C. § 2254(b)(3).  Additionally, Mr. Goodwin can

overcome any procedural default of his ineffective assistance of trial counsel claims under

*Martinez v. Ryan*, 566 U.S. 1 (2012).

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Arianna J. Freeman*
ARIANNA J. FREEMAN
Managing Attorney, Non-Capital Habeas Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106

</div>

DATE:  December 7, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Arianna J. Freeman, hereby certify that on this date, I caused the foregoing to be filed and served through this Court's CM/ECF system upon filing user Matthew Stiegler, Supervisor, Federal Litigation Unit, Philadelphia District Attorney's Office.

Respectfully submitted,

/s/ *Arianna J. Freeman*
ARIANNA J. FREEMAN

DATE:  December 7, 2021